Román D. Hernández, OSB No. 011730
rhernandez@cablehuston.com
Jared M. Ahern, OSB No. 221919
jahern@cablehuston.com
Olivia M. Loftin, OSB No. 225812
oloftin@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, Oregon 97201
Tele: (503) 224-3092
Fax: (503) 224-3167

*Attorneys for Defendants Lincoln County, David
Collier, Kelly Meininger in her capacity as the
Personal representative of the Estate of Claire Hall,
Walter Chuck, and Kristin Yuille*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CASEY MILLER,<br><br>            Plaintiff,<br><br>     v.<br><br>LINCOLN COUNTY, a public body, DAVID COLLIER, in his individual capacity, KELLY MEININGER, in her capacity as the personal representative of the estate of CLAIRE HALL, WALTER CHUCK, in his individual capacity, and KRISTIN YUILLE, in her individual capacity,<br><br>            Defendants. | Case No. 6:26-cv-00499-AA<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 2

       A.     The Role of County Commissioner ........................................................ 2

       B.     Lincoln County's Board of Commissioners ............................................ 5

       C.     The September 18, 2024, Board Meeting ............................................... 6

III.   LEGAL STANDARD FOR PRELMINARY INJUNCTIONS ........................................ 9

IV.    PLAINTIFF FAILS TO CARRY HIS BURDEN OF DEMONSTRATING HE IS
       ENTITLED TO A PRELMINARY INJUNCTION .......................................................... 10

       A.     Plaintiff Fails to Provide Sufficient Evidence to Meet his Burden of Proof. ....... 10

       B.     Plaintiff is not Likely to Succeed on the Merits of His First Amendment Claim. 10

              1.     Plaintiff Has Not Suffered a Materially Adverse Action. ........................... 11

              2.     Defendants Would Have Completed an Investigation and Implemented
                     Security Measures Regardless, and Therefore There is No Causal
                     Relationship Between Plaintiff's Speech and any Alleged Adverse
                     Action ........................................................................................................... 15

       C.     Plaintiff is Not Likely to Suffer Irreparable Harm ................................................. 17

       D.     Defendants Will Suffer More Hardship than Plaintiff Will Suffer Inequity
              and the Injunction is not in the Public Interest. ..................................................... 18

V.     CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Boquist v. Courtney*,
   32 F.4th 764 (9th Cir. 2022) ................................................................................. 10, 11, 15, 16

*Cascadia Wildlands v. Thrailkill*,
   49 F. Supp. 3d 774 (D. Or. 2014) ...................................................................................... 9

*CI Games S.A. v. Destination Films*,
   No. 2:16-CV-05719-SVW-JC, 2016 WL 9185391 (C.D. Cal. Oct. 25, 2016) ........................ 10

*Citizens of the Ebey's Rsrv. for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*,
   122 F. Supp. 3d 1068 (W.D. Wash. 2015) ........................................................................... 17

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
   82 F.4th 664 (9th Cir. 2023) ............................................................................................... 16

*Flores v. Bennett*,
   635 F. Supp. 3d 1020 (E.D. Cal. 2022) ................................................................................ 9

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) .............................................................................................. 9

*Houston Cmty. Coll. Sys. v. Wilson*,
   595 U.S. 468 (2022) ...................................................................................................... 11, 14

*Linthicum v. Wagner*,
   707 F. Supp. 3d 1003 (D. Or. 2023) .................................................................................... 18

*Lydo Enters., Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) ....................................................................................... 16, 17

*Mendoza v. Garrett*,
   358 F. Supp. 3d 1145 (D. Or. 2018) .................................................................................... 9

*Nilsson v. Baker Cnty., Oregon*,
   No. 2:19-CV-01250-HL, 2022 WL 17156771 (D. Or. Nov. 21, 2022) ................................. 15

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
   762 F.2d 1374 (9th Cir. 1985) ........................................................................................... 17

*Shaterian v. Wells Fargo Bank, Nat. Ass'n*,
   No. C-11-920 SC, 2011 WL 2314151 (N.D. Cal. June 10, 2011) ......................................... 10

*Whole Woman's Health v. Jackson*,
  141 S. Ct. 2494 (2021) ................................................................................................. 9

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................ 9

Statutes

ORS 192.660(2)(b) ......................................................................................................... 12

ORS 203.111 ..................................................................................................................... 2

ORS 203.230 ..................................................................................................................... 2

ORS 203.240 .............................................................................................................. 2, 3, 4

Rules

Fed. R. Civ. P. 65 ............................................................................................................. 9

Defendants Lincoln County, David Collier, Kelly Meininger, in her capacity as personal representative of the estate of Claire Hall, Walter Chuck, and Kristin Yuille submit this Response to Plaintiff Casey Miller's Motion for Preliminary Injunction. This Response is supported by the memorandum of law below, the records and files in this case, and the concurrently filed declarations of Kristin Yuille and David Collier.

## I.    INTRODUCTION

Plaintiff's motion for preliminary injunction, like his entire lawsuit, is a political stunt completely devoid of merit. Plaintiff has the burden of demonstrating to the Court that he is entitled to the extraordinary remedy of a preliminary injunction. Despite this, Plaintiff does not submit *any evidence* in support of his motion. He thus fails to carry his burden, and the Court should deny it for this reason alone.

In addition to Plaintiff's dispositive failure to submit evidence, Plaintiff's motion fails for separate and additional reasons. First, Plaintiff is not likely to succeed on the merits of his First Amendment claim because he has not suffered any adverse action. Even if he had, the County's motive in taking its actions was not in response to protected activity of Plaintiff, but was based on other reasons, such as ensuring County employees felt safe doing their jobs. Second, Plaintiff has not shown he is likely to suffer irreparable harm if he does not obtain a preliminary injunction, as his First Amendment rights have not been violated. Further, his substantial delay in filing this lawsuit and motion—he alleges the County first began "obstructing his rights" in September 2024—destroys any argument that he will be irreparably harmed without the extraordinary remedy of preliminary injunctive relief from this Court.

Further, the balance of equities favors Defendants, and it would not be in the public interest to grant Plaintiff's motion. Not only have Defendants not violated Plaintiff's First

Page 1 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Amendment rights, but Plaintiff's actions have caused substantial and ongoing disruption to the County's operations. The County has had to take safety and other measures to minimize these disruptions without impeding Plaintiff's ability to do his job, but Plaintiff persists with his numerous meritless "grievances" because he wants political and media attention. This lawsuit and his meritless, unsupported motion are just the latest examples of his cries for attention that harm, rather than help, the County and the people he is supposed to be serving. The Court should deny Plaintiff's motion.

## II.    BACKGROUND

### A.    The Role of County Commissioner

Generally, Oregon counties are governed by a county court consisting of two commissioners and a county judge. ORS 203.111. Counties can abolish the role of the county judge and replace the county judge with a county commissioner, thereby creating a three-person board of commissioners. ORS 203.230. Lincoln County has a three-person Board of Commissioners ("Board"). Yuille Decl. ¶ 2.

ORS 203.240 establishes the organization, powers, and duties of a board of commissioners in an Oregon county. Under ORS 203.240:

> (1) A board of county commissioners shall:
>     (a) Have the powers and duties and be otherwise subject to the laws applicable to county courts sitting for the transaction of county business.
>     (b) Unless provided otherwise by county charter or ordinance, consist of three county commissioners. A majority of the board is required to transact county business.
>     (c) Except as otherwise provided in ORS 203.230(5) or an order issued under ORS 203.230(1), appoint a chairperson from among their number who shall serve until the first Monday in January next following appointment. If two members of the board cannot agree on the appointment of a chairperson, the member of the board who is longest in length of service shall act as chairperson.

/ / /

Page 2 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

(2) When a county has established a board of county commissioners any reference in the statutes to the county court of that county shall be considered a reference to the board of county commissioners of the county.

ORS 203.240.

In 2021, the County established the position of County Administrator through County Ordinance # 517. Yuille Decl. ¶ 3, Ex. A. The County established this position to "exercise authority over specific areas of County operations as determined by the Board of Commissioners." Yuille Decl. ¶ 3, Ex. A. This ordinance provides the County Administrator with the same authority as the Board for all the County service districts under ORS Chapter 451. Yuille Decl. ¶ 3, Ex. A. The Board appoints the County Administrator and can remove the County Administrator by a majority vote of the Board after the process provided is followed. Yuille Decl. ¶ 3, Ex. A. If there is a vacancy, absence, or disability affecting the role of County Administrator, the Board can designate an Acting County Administrator, who shall have all the powers of the County Administrator until a new County Administrator is appointed, or can designate a person to temporarily fill the position during the County Administrator's temporary absence. Yuille Decl. ¶ 3, Ex. A.

Generally, the County Administrator is responsible to the Board for the day-to-day administration of the County and its service districts. Yuille Decl. ¶ 3, Ex. A. The organization of the County is as follows:

/ / /

/ / /

/ / /

Page 3 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION



Yuille Decl. ¶ 4, Ex. B.

While the County Administrator is in charge of day-to-day operations, the County generally conducts its business at twice monthly Board meetings, over which the Chair of the Board presides. Yuille Decl. ¶ 5. County business can only be conducted with the agreement of a majority of the Board. ORS 203.240. The County's established practice is that the Chair of the Board, County Administrator, and County Counsel meet prior to the next County business meeting to set the agenda. Yuille Decl. ¶ 6. Additionally, Board meeting agenda items can be added to the agenda with approval from at least two commissioners on the Board. Yuille Decl. ¶ 6.

/ / /

/ / /

Page 4 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

In addition to County business meetings, the County also holds management team meetings for all department directors and elected officials. Collier Decl. ¶ 2. Collier, as the County Human Resources Director, runs these informal meetings, which are for the sole purpose of sharing information between departments. Collier Decl. ¶ 3. Board attendance is not required at management meetings, and no decisions are made at these meetings. Collier Decl. ¶ 4. There is also no legal requirement that the other elected officials at the County—the Assessor, Clerk, District Attorney, Sheriff, and Treasurer—attend the management meetings.

**B.      Lincoln County's Board of Commissioners**

Plaintiff was sworn in as a County commissioner in January 2023. Yuille Decl. ¶ 7. Plaintiff first served on the Board with Commissioner Hall and Commissioner Kaety Jacobson. Yuille Decl. ¶ 8. In February 2025, Commissioner Jacobson resigned and was replaced by Commissioner Chuck. Yuille Decl. ¶ 9. In 2024, Plaintiff served as Chair of the Board, which entitled him to preside over Board meetings. Yuille Decl. ¶ 10.

In 2022, the Board appointed Tim Johnson as the County Administrator. Yuille Decl. ¶ 11. In 2025, Johnson resigned from this position. *Id*. In January 2025, the Board appointed Hall as Chair of the Board, and after Johnson resigned, appointed Hall as the Acting County Administrator. Yuille Decl. ¶ 12. During her time as Acting County Administrator, Hall delegated some administrative tasks to Yuille and Collier. Yuille Decl. ¶ 13. Hall remained Chair of the Board until she passed away on January 4, 2026, and to date, her commissioner position has not been filled. Yuille Decl. ¶ 14. After Hall passed away, Plaintiff and Chuck shared the role of Chair of the Board, solely for the purpose of presiding over meetings, and each presided over one County business meeting per month. Yuille Decl. ¶ 15. Though these meetings are generally held in person at the County courthouse, the meetings have been held virtually since

Page 5 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

March 18, 2026, due to escalating safety concerns caused by public disruptions during in-person meetings. Yuille Decl. ¶ 16.

### C.    The September 18, 2024, Board Meeting

On September 18, 2024, the Board held a regular County business meeting. Yuille Decl. ¶ 17. At this meeting, Plaintiff disclosed confidential personnel matters, medical information about a County employee, bullied and disrespected fellow Commissioners and County staff, and made comments that reflected poorly on the County and were seemingly for personal gain. Yuille Decl. ¶ 18.

Several individuals who viewed the September Board Meeting reported Plaintiff's comments to Human Resources, and the County decided to hire a third party to investigate whether Plaintiff's actions violated the County Personnel Rules. Yuille Decl. ¶ 19. The investigation determined the following impacts resulting from Plaintiff's actions:

- "The office has been really impacted by this. The team we had on September 17 is not the team we have now. [Crying] It's like 'trauma,' and I don't use that term lightly. People are really traumatized…It wasn't just the people at the dais, it was the people in the audience, other management team members, people in offices, not at the meeting, that really felt bullied, that felt like Casey [Miller] is unsafe. They don't want to meet with him. I've had many conversations about I don't want to meet with this person. "

- "The concern that staff has expressed to me, this is not just Board of Commissioners staff or County administration staff, even department heads are saying, 'I don't know if I can trust this individual? He may throw me under the bus,' and they're scared to death of that, so there are others who don't even want to be in a meeting with him."

- "I think for some it is irreparable; maybe for a lot, it's irreparable. That being said, I also think that I'm thinking of directors who have made comments to me. Most are professional and could continue to work with the individual but I think it would be difficult; but I also realize that he's an elected official and we don't get to just say this isn't working."

- "For me, I don't trust one of my commissioners, and I am saddened that even though he worked in the County for so many years, he did not seem to understand. This is just bad for the County to do something like this…This whole

Page 6 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

process has created enough of a disruption that I have just exited the conversation. That's an impact. We're just not going to be part of this discord."

- "For Casey [Miller] to act the way he did to county employees, I've never been fearful of my position, but I felt unsafe as well. I have relationships with commissioners. I've felt really confident in where I stand in Lincoln County. But after the meeting, I walked away thinking I'm nobody. And they don't understand me at all…People contacted me thinking I was still in that role with complaints and questions and a lot of fear. One person said, "it felt like we were going through a divorce and we were the kids of the divorce and watching our parents fight it out." It made people really uncomfortable and fearful for their positions. I was more floored and upset for the people that were sitting up there. The situation itself is pretty mind blowing."

- "He blew up the office. He blew us apart. Before this event everybody came to work with joy. It was a perfect place to work, including our fearless leader who can be a little weird at times. It was someplace that wasn't like I don't want to go to work or I want to call in sick. We work well together. We really are an office family with everything that means. He really hurt people in that attack."

- "It made me feel really insecure. Since I've been in the job I've been pretty supremely confident. For part of the period, home wasn't a safe place and the office was pretty special and that safety and motivation to be there has been disturbed."

- "I can only describe it as traumatic for some people and it had a ripple effect through the workplace. A lot of employees watched that video because they heard about it. It reinforced the trauma of it in a way."

- "He's made me physically ill. He's jeopardized my income. I feel unsafe with him."

- "It just brought me back into environment [that was] very toxic…When this happened, he publicly put staff and the people he works with down, thinking he's being transparent. It just brought me back to that place and seeing people coming from the meeting crying and headed to the bathroom, watching people leave for day. The office basically emptied out. It took me to a place where I didn't want to be. I didn't want to be in a hostile work environment, where you can't say anything."

- "That's why it hurt me so badly to think what I had fancied to be an oasis from that kind of thing is now we're there. So I think there's, to use word permanent damage might be overstated –all of a sudden our collaborative nature was blown up in knife fight in a public setting during a meeting, a calculated political takedown, oh, wow, and how do we undo that? How do you un-ring the bell?"

Yuille Decl. ¶ 20, Ex. C.

Page 7 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

As a result of Plaintiff's behavior, the third-party investigation, and the impact Plaintiff's actions had on the County, the County determined it necessary to implement a few security measures to ensure its staff's safety and the County's ability to run efficiently. Yuille Decl. ¶ 21.

On September 19, 2024, Collier informed Plaintiff that he was no longer allowed to attend management meetings, contact Board staff during the investigation, or occupy his courthouse office, and that he could contact one certain staff member if he needed assistance. Collier Decl. ¶¶ 6, 8. Some participants said that they would not attend the management meetings if Plaintiff continued to attend. *Id*. As attending these meetings is not part of a commissioner's duties, it would not impact Plaintiff's ability to perform his duties as commissioner. Collier Decl. ¶ 4. The County informed Plaintiff that Collier would provide him with updates on these meetings. Collier Decl. ¶ 7. However, Plaintiff never contacted Collier and never requested updates on the management meetings. Collier Decl. ¶ 9.

Further, the County informed Plaintiff that he would no longer be able to access the office within the County courthouse, which is a space shared by administration and legal staff. Yuille Decl. ¶ 22. Instead, the County rented Plaintiff a separate office space less than 0.3 miles from the County courthouse. Yuille Decl. ¶ 23. This was to ensure that other County staff felt safe coming to work and could perform their jobs. Yuille Decl. ¶ 24. Plaintiff still had – and still has – an office provided by the County. Yuille Decl. ¶ 25. However, Plaintiff, to date, has not picked up the keys to this office space and has chosen not to use the office space. *Id*. The County continues to rent this office space for Plaintiff's use. *Id*.

On or about March 6, 2026, Plaintiff filed for re-election for County commissioner. Yuille Decl. ¶ 26. On March 13, 2026, Plaintiff filed an unverified Complaint against the County and other county-affiliated defendants alleging First Amendment and whistleblower violations.

Page 8 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff then filed his motion for preliminary injunction —which is not supported by any declarations or any evidence at all—on March 31, 2026.

### III.    LEGAL STANDARD FOR PRELMINARY INJUNCTIONS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see* Fed. R. Civ. P. 65. Plaintiff has the burden of establishing all four elements provided in *Winter*. *Cascadia Wildlands v. Thrailkill*, 49 F. Supp. 3d 774, 777–778 (D. Or. 2014), *aff'd*, 806 F.3d 1234 (9th Cir. 2015); *see also Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021).

There are two types of preliminary injunctions: prohibitory and mandatory. Prohibitory injunctions prohibit a party from taking action and maintain the status quo, while a mandatory injunction requires a party to take action and goes beyond maintaining the status quo. *See Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1162–63 (D. Or. 2018).

An applicant for a mandatory injunction bears a higher burden of proof than prohibitory injunctions, and mandatory injunctions are permissible only "when extreme or very serious damage will result that is not capable of compensation in damages, and the merits of the case are not doubtful." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (internal citations omitted), *see also Mendoza,* 358 F. Supp. 3d at 1162–63.

/ / /

/ / /

/ / /

Page 9 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## IV.    PLAINTIFF FAILS TO CARRY HIS BURDEN OF DEMONSTRATING HE IS ENTITLED TO A PRELMINARY INJUNCTION

### A.    Plaintiff Fails to Provide Sufficient Evidence to Meet his Burden of Proof.

Plaintiff has the burden proof to establish the *Winter* elements. *Whole Woman's Health*, 141 S. Ct. at 2495. The *Winter* elements require "factual support beyond the allegations of the complaint [.]" *Flores v. Bennett*, 635 F. Supp. 3d 1020, 1030 (E.D. Cal. 2022), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023) (citing *CI Games S.A. v. Destination Films*, No. 2:16-CV-05719-SVW-JC, 2016 WL 9185391 at *11 (C.D. Cal. Oct. 25, 2016)); *see also Shaterian v. Wells Fargo Bank, Nat. Ass'n*, No. C-11-920 SC, 2011 WL 2314151 at *4 (N.D. Cal. June 10, 2011) (stating that "a plaintiff may not support a motion for a preliminary injunction by merely pointing to his complaint and the facts alleged therein").

Plaintiff has not submitted any evidence in support of his motion. No verified complaint. No declarations. Nothing. The Court should deny Plaintiff's motion since he has failed to present any evidence to establish the elements needed to grant a preliminary injunction.

### B.    Plaintiff is not Likely to Succeed on the Merits of His First Amendment Claim.

Even if Plaintiff had attempted to meet his burden by submitting evidence with his motion, and even if everything he alleged in his Complaint was true, the Court would still need to deny his motion because his claims fail as a matter of law.

As an elected official, to prove a First Amendment claim Plaintiff has the burden to prove that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist v. Courtney*, 32 F.4th 764,

775 (9th Cir. 2022) (internal citations omitted). Though Plaintiff's comments at the September

Board Meeting could be constitutionally protected speech, Plaintiff has failed to prove that he is

likely to succeed on the merits of his First Amendment claim as he has failed to establish each of

the remaining required elements. Therefore, Plaintiff fails to meet the first *Winter* element.

### 1.    Plaintiff Has Not Suffered a Materially Adverse Action.

An elected official will have suffered a materially adverse action if he is prevented from

doing the job for which he was elected. *See Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir.

2022) (a material adverse action "prevents him from enjoying the full range of rights and

prerogatives that came with having been publicly elected.") (internal citations omitted).

Additionally, though elected officials have the right to speak on government policy, "it cannot be

used as a weapon to silence other representatives seeking to do the same." *See Houston Cmty.*

*Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).

Plaintiff alleges (without evidence) that he has suffered adverse actions because the

County has obstructed him from putting items on the Board business meeting agendas, has

obstructed him from attending County management meetings, and has obstructed him from

accessing his office in the County courthouse. Motion, p. 3. Defendants have not obstructed

Plaintiff from putting items on the Board business meeting agendas. Yuille Decl. ¶ 27. Plaintiff

misstates the process by which a commissioner can add items to the Board business meeting

agendas. These meetings are intended to conduct County business. Yuille Decl. ¶ 27. The Board

is responsible for review and approval of matters of County concern under ORS Chapter 203.

These matters include agreements, budgets, contracts, grant awards, land use decisions, leases,

ordinances, policies, and a myriad of other business matters of County concern. Yuille Decl. ¶

27.

Page 11 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION

Board meeting agenda items will only be added to the agenda with approval from the Chair, County Administrator, and County Counsel at agenda-setting meetings. Yuille Decl. ¶ 6. Alternatively, agenda items can be added by at least two commissioners on the Board. *Id*.

Plaintiff has submitted agenda items for consideration, and those items were rejected if he did not receive approval from at least one of the other Commissioners. Yuille Decl. ¶ 28. They may also be rejected if they have not gone through legal review, which is required before placement on the agenda. Yuille Decl. ¶ 29. For example, on March 3, 2025, County Counsel Yuille requested information from Plaintiff on his agenda request for an executive session to discuss labor negotiations and personnel issues. Yuille Decl. ¶ 30. Pursuant to ORS 192.660(2)(b), an employee can request an open hearing and must be provided with the opportunity to request an open hearing. Plaintiff did not respond to Yuille's email requesting information on the labor negotiation item or who the personnel matter(s) were regarding. Yuille Decl. ¶ 31. Similarly, on July 22, 2025, Yuille responded to another email from Plaintiff requesting an executive session to discuss personnel matters under ORS 192.660(2)(b). Yuille Decl. ¶ 32. Again, Plaintiff did not provide information on who the personnel matter was regarding. Yuille Decl. ¶ 33.

At the October 1, 2025, Board business meeting, Plaintiff requested discussion on a potential agenda topic, and neither Commissioner Chuck nor Commissioner Hall entertained the motion. Yuille Decl. ¶ 34. At the November 5, 2025, Board business meeting, Plaintiff requested discussion on a potential agenda topic, and neither Commissioner Chuck nor Commissioner Hall entertained the motion. Yuille Decl. ¶ 35. At the November 26, 2025, Board business meeting, Plaintiff made a motion to review agenda items, but Commissioner Chuck and Commissioner Hall declined to second the motion, and it failed. Yuille Decl. ¶ 36. At the March 18, 2026,

Page 12 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

meeting, Plaintiff made a motion to bring back an agenda item to the next meeting, and Commissioner Chuck declined to second the motion, and it failed. Yuille Decl. ¶ 37.

At the April 3, 2026, Board business meeting, an item of discussion was for "Agenda Topics." Yuille Decl. ¶ 38. One of the topics raised by Plaintiff was a request for a Special Meeting with Commissioner Chuck and the Finance Director so he could better understand the Board's budget line items. *Id*. Commissioner Chuck declined to approve scheduling a Special Meeting for that purpose, and indicated Plaintiff could reach out to the Finance Director with his questions on his own. *Id*. Plaintiff proposed several other agenda topics at the April 3rd Board business meeting, which were matters that had not gone through legal review, were inquiries Plaintiff could have made outside of the business meeting, or were not actionable items for the Board. Yuille Decl. ¶ 39.

Plaintiff's allegation that he is being blocked from putting items on the Board agenda is based on an inaccurate view of the required democratic process for County business meetings, or his failure to follow legal requirements, such as in the case of requests for executive session. The County is simply following its own rules or legal notice requirements, and Plaintiff is not being subjected to materially adverse actions simply because those rules do not allow a commissioner to put items on the agenda without the support of one other commissioner.

With respect to management meetings, Plaintiff's role as a commissioner does not provide him with the right to attend these meetings. Collier Decl. ¶ 4. The County management meetings are only held to exchange information between County departments – not to make decisions or conduct County business. Collier Decl. ¶ 3–4. Any important information discussed at these meetings is relayed to the proper departments and officials. Collier Decl. ¶ 5. Despite not being required to do so, the County has offered Plaintiff the opportunity to discuss these

Page 13 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

meetings with Collier, whose role it is to run County management meetings. Collier Decl. ¶ 3, 8. Plaintiff has never even attempted to obtain information about these meetings from Collier. Collier Decl. ¶ 9. Therefore, the County's decision to stop permitting Plaintiff to attend County management meetings is not a materially adverse action, because it is not a part of his job as commissioner to attend these meetings.

Finally, the County has not taken away Plaintiff's office. Instead, the County temporarily rented Plaintiff a separate office space 0.3 miles from the County courthouse. Yuille Decl. ¶ 23. This was to ensure that other County staff felt safe coming to work and were able to perform their work. Yuille Decl. ¶ 24. Plaintiff still has an office provided by the County. Yuille Decl. ¶ 25. However, Plaintiff has not picked up the keys to this office space and has chosen not to use the office space. *Id*. The County continues to rent this office space for Plaintiff's use. *Id*. The County has not obstructed Plaintiff from doing his job, and Plaintiff's arguments and allegations to the contrary are mere political grandstanding.

In *Houston Cmty. Coll. Sys.*, the facts were very similar to the case at issue, and the Court found that the plaintiff had not suffered a material adverse action, explaining:

> Given these features of Mr. Wilson's case, we do not see how the Board's censure could qualify as a materially adverse action consistent with our case law. The censure at issue before us was a form of speech by elected representatives. It concerned the public conduct of another elected representative. Everyone involved was an equal member of the same deliberative body. As it comes to us, too, the censure did not prevent Mr. Wilson from doing his job, it did not deny him any privilege of office, and Mr. Wilson does not allege it was defamatory. At least in these circumstances, we do not see how the Board's censure could have materially deterred an elected official like Mr. Wilson from exercising his own right to speak.

*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 479 (2022).

/ / /

Here, Plaintiff was investigated for his public conduct and the impact his actions had on

Page 14 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

the County, and the County implemented security measures to ensure its staff's safety and the County's ability to run efficiently. Like in *Houston Cmty. Coll. Sys.*, Plaintiff has not been denied any privilege of his office, and he is fully able to perform the duties required by his role as commissioner. Because Plaintiff is still able to perform the duties of a commissioner, the County's decision to relocate Plaintiff's office, to no longer permit him to attend management meetings, and any other adjustments made as a result of the investigation, are not materially adverse actions. Because Plaintiff has not suffered a materially adverse action, Plaintiff has not carried his burden of showing that he is likely to succeed on his First Amendment claim. *Boquist*, 32 F.4th at 775.

> **2.    Defendants Would Have Completed an Investigation and Implemented Security Measures Regardless, and Therefore There is No Causal Relationship Between Plaintiff's Speech and any Alleged Adverse Action.**

Plaintiff has not suffered any adverse actions as a result of his protected speech at the September Board Meeting, and therefore Plaintiff cannot establish any causal relationship. However, even if this Court determined there was an adverse action, Plaintiff's First Amended claim would still fail because there is no causal relationship between the allegedly adverse action and Plaintiff's protected speech.

"In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." *See Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022); *see also Nilsson v. Baker Cnty., Oregon*, No. 2:19-CV-01250-HL, 2022 WL 17156771, at *6 (D. Or. Nov. 21, 2022), *report and recommendation adopted*, No. 2:19-CV-01250-HL, 2022 WL 17170713 (D. Or. Nov. 22, 2022).

Page 15 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

"[I]f the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action, and there was no violation of the plaintiff's constitutional rights." *See Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022).

In *Boquist*, the government applied security measures in response to concerns arising from the elected official's protected speech, and the court determined that the government would have implemented the same security measures whether or not they were intending to retaliate against the elected official. *See Boquist*, 32 F.4th at 778. Accordingly, there was no First Amendment violation because the government's motive was not a but-for cause of security measures implemented. *Id*.

Similarly to *Boquist*, here, the County would have been inclined to implement security measures to protect its staff and other elected officials from harassment and disruption regardless of any retaliatory motive regarding Plaintiff's speech. This is due to the fact that, as a result of Plaintiff's actions, (1) key employees working in the courthouse administration office choose to work from home when Board business meetings occur at the courthouse due to Plaintiff's disruptive behavior; (2) Plaintiff is widely perceived to have encouraged members of the public to attack the County government in various ways; and (3) some management team meeting participants said that would not attend the meetings if Plaintiff also attended. Yuille Decl. ¶ 43; *see also* Collier Decl. ¶ 6. Because the County would have taken these security measures regardless of its motive, Plaintiff fails to show that he is likely to succeed on the merit of his First Amendment claim.

/ / /

/ / /

Page 16 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

C.      **Plaintiff is Not Likely to Suffer Irreparable Harm.**

Plaintiff merely alleges the rule that the loss of First Amendment rights "unquestionably constitutes irreparable injury," but provides no supporting information, facts, or evidence, to support his claim that he is likely to be irreparably harmed. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc) (internal citations omitted). As explained above, Plaintiff's First Amendment rights have not been violated. Accordingly, Plaintiff is not likely to suffer irreparable harm. *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984) (finding that because Plaintiff failed to show a violation of the First Amendment, there was no irreparable injury).

Further, Plaintiff claims he began to suffer adverse actions from the County beginning in September 2024. Motion, p. 2–3. However, Plaintiff did not file his Complaint until March 13, 2026, and did not file his motion for preliminary injunction until March 31, 2026. Plaintiff's delay of over a year and a half in pursuing this action and related preliminary injunction defeats his argument that he will be irreparably harmed without a preliminary injunction. *Lydo Enters.*, 745 F.2d at 1213 ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

In *Oakland Trib., Inc. v. Chron. Pub. Co.*, the Court stated that "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." 762 F.2d 1374, 1377 (9th Cir. 1985). The Court stated further that "[w]here no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years." *Id*; *see also Lydo Enters.*, 745 F.2d at 1213 (stating that "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *see also*

*Citizens of the Ebey's Rsrv. for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083–84 (W.D. Wash. 2015) (finding "Plaintiff's failure to seek a preliminary injunction in a more timely manner also weighs against a finding of irreparable harm" when Plaintiff waited 16 months to file motion).

Plaintiff's assertion that he is being irreparably harmed by actions he alleges constitute violation of his First Amendment rights, and that he needs immediate preliminary relief, is defeated by the fact that he waited over a year and a half to bring this action.

**D.     Defendants Will Suffer More Hardship than Plaintiff Will Suffer Inequity and the Injunction is not in the Public Interest.**

"When the government is a party, these last two factors of the preliminary injunction analysis will merge." *Linthicum v. Wagner*, 707 F. Supp. 3d 1003, 1012–1013 (D. Or. 2023), *aff'd*, 94 F.4th 887 (9th Cir. 2024). In *Linthicum*, the Court could not find that the injunction was in the public interest when the Plaintiffs had not sufficiently proven their First Amendment retaliation claim. *Id*. Here, Plaintiff has also failed to provide enough evidence to prove his First Amendment claim because he has not provided any evidence at all. Therefore, Plaintiff cannot meet the final two elements of the *Winter* test, and his motion should be denied.

Even if Plaintiff had shown that there is a likelihood he will succeed on his First Amendment claim, and even assuming he had submitted evidence with his motion supporting all of his allegations, the Court should still deny the motion because the balance of equities weigh in favor of Defendants, and it is not in the public interest to grant his motion.

Plaintiff's statements and actions have greatly disrupted Lincoln County and its employees. Yuille Decl. ¶ 40. The County has not obstructed Plaintiff's ability to do his job and has only implemented security measures to protect its staff and to limit the substantial disruptions Plaintiff has caused the County. Yuille Decl. ¶ 41. Allowing Plaintiff to have an

Page 18 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

office where County support staff work and allowing Plaintiff to attend the Board management meetings with other employees would be a severe detriment to the County's ability to conduct its business operations. Yuille Decl. ¶ 42. Key employees working in the County courthouse administration office choose to work from home when Board business meetings occur at the courthouse due to Plaintiff's disruptive behavior. Plaintiff is widely perceived to have encouraged members of the public to attack the County government in various ways, including, by encouraging public comment consisting of personal attacks on staff, a constant stream of public records requests, and, in one instance, reportedly advising a constituent to sue the County. Yuille Decl. ¶ 43.

Further, Plaintiff has not been obstructed from adding agenda items to County business meetings. Yuille Decl. ¶ 27. Instead, he has simply failed to obtain the approval from another commissioner necessary to add agenda items to these meetings under the County rules. Yuille Decl. ¶ 6. Accordingly, it would be a great hardship on the Defendants and would effectively force the County to violate its own rules, to grant Plaintiff the relief he seeks. Because it would go against the public interest of running a smooth and efficient government, the public interest and the equities favor Defendants, and Plaintiff's motion should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 19 – DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## V.    CONCLUSION

Plaintiff has failed to meet his burden of proof on his request for a preliminary injunction, and the Court should deny Plaintiff's motion.

DATED April 14, 2026.

CABLE HUSTON LLP

By: s/ Román D. Hernández
    Román D. Hernández, OSB No. 011730
    rhernandez@cablehuston.com
    Jared M. Ahern, OSB No. 221919
    jahern@cablehuston.com
    Olivia M. Loftin, OSB No. 225812
    oloftin@cablehuston.com
    1455 SW Broadway, Suite 1500
    Portland, OR 97201
    *Attorneys for Defendants Lincoln County, David Collier, Kelly Meininger in her capacity as the Personal representative of the Estate of Claire Hall, Walter Chuck, and Kristin Yuille*