Román D. Hernández, OSB No. 011730
rhernandez@cablehuston.com
Jared M. Ahern, OSB No. 221919
jahern@cablehuston.com
Olivia M. Loftin, OSB No. 225812
oloftin@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, Oregon 97201
Tele: (503) 224-3092
Fax: (503) 224-3167

*Attorneys for Defendants Lincoln County, David
Collier, Kelly Meininger in her capacity as the
Personal representative of the Estate of Claire Hall,
Walter Chuck, and Kristin Yuille*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CASEY MILLER, <br><br> Plaintiff, <br><br> v. <br><br> LINCOLN COUNTY, a public body, DAVID COLLIER, in his individual capacity, KELLY MEININGER, in her capacity as the personal representative of the estate of CLAIRE HALL, WALTER CHUCK, in his individual capacity, and KRISTIN YUILLE, in her individual capacity, <br><br> Defendants. | Case No. 6:26-cv-00499-AA <br><br> **DECLARATION OF KRISTIN YUILLE IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

I, Kristin Yuille, being duly sworn, hereby declare:

1.      I am County Counsel for Lincoln County. I make this declaration in support of

Defendants' Response to Plaintiff's Motion for a Preliminary Injunction. I have personal

Page 1 – DECLARATION OF KRISTIN YUILLE

knowledge of the matters set forth herein and, if called upon to do so, could testify competently to their truth.

2.      Lincoln County has established a three-person Board of Commissioners ("Board").

3.      In 2021, the County established the position of County Administrator through County Ordinance # 517. Attached hereto as **Exhibit A** is a true and correct copy of County Ordinance # 517.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the Lincoln County Organization Chart.

5.      While the County Administrator is in charge of day-to-day operations, the County generally conducts its business at twice-monthly Board meetings, over which the Chair of the Board presides.

6.      The County's established practice is that the Chair of the Board, County Administrator, and County Counsel meet prior to the next County business meeting to set the agenda. Additionally, Board meeting agenda items can be added to the agenda with approval from at least two commissioners on the Board.

7.      Plaintiff Casey Miller was sworn in as a County commissioner in January 2023.

8.      Miller first served on the Board with Commissioner Claire Hall and Commissioner Kaety Jacobson.

9.      In February 2025, Commissioner Jacobson resigned and was replaced by Commissioner Walter Chuck.

10.     In 2024, Miller served as the Chair of the Board, which entitled him to preside over Board meetings.

11.     In 2022, the Board appointed Tim Johnson as the County Administrator. In 2025, Johnson resigned from this position.

12.     In January 2025, the Board appointed Hall as Chair of the Board, and after Johnson resigned, appointed Hall as Acting County Administrator.

Page 2 – DECLARATION OF KRISTIN YUILLE

13. During her time as Acting County Administrator, Hall delegated some administrative duties to me and David Collier.

14. Hall remained Chair of the Board until she passed away on January 4, 2026, and to date, her commissioner position has not been filled.

15. After Hall passed away, Miller and Chuck shared the role of Chair of the Board, solely for the purpose of presiding over meetings, and each preside over one County business meeting per month.

16. Though these meetings are generally held in person at the County courthouse, the meetings have been held virtually since March 18, 2026, due to escalating safety concerns caused by public disruptions during in-person meetings.

17. On September 18, 2024, the Board held a regular County business meeting ("September Board Meeting").

18. At this meeting, Miller disclosed confidential personnel matters, medical information about a County employee, disrespected fellow Commissioners and County staff, and made comments that reflected poorly on the County and were seemingly for personal gain.

19. Several individuals who viewed the September Board Meeting made reports and complaints about Miller's conduct to Human Resources, and the County decided to hire a third party to investigate whether Miller's actions violated the County Personnel Rules.

20. Attached hereto as **Exhibit C** is a true and correct copy of the Witness Impact Statements from the third-party investigation into Miller's actions at the September Board Meeting.

21. As a result of Miller's behavior, the third-party investigation, and the impact Miller's actions had on the County, the County determined it necessary to implement a few security measures to ensure its staff's safety and the County's ability to run efficiently.

22. The County informed Miller that he would no longer be able to access his office within the County courthouse, which is a space shared by administration and legal staff.

Page 3 – DECLARATION OF KRISTIN YUILLE

23. Instead, the County temporarily rented Miller a separate office space less than 0.3 miles from the County courthouse.

24. This was to ensure that other County staff felt safe coming to work and could perform their jobs.

25. However, Miller, to date, has not picked up the keys to this office space and has chosen not to use the office space. The County continues to rent this office space for Miller's use.

26. On or about March 6, 2026, Miller filed for re-election for county commissioner.

27. Defendants have not obstructed Miller's ability to put items on the Board business meeting agendas. These meetings are intended to conduct County business. These matters include agreements, budgets, contracts, grant awards, land use decisions, leases, ordinances, policies, and a myriad of other business matters of County concern.

28. Though Miller has submitted agenda items for consideration, his proposed agenda items are not added to the agenda unless they receive approval from at least one of the other commissioners.

29. They may also be rejected if they have not gone through legal review, which is required before placement on the agenda.

30. On March 3, 2025, I requested information from Miller on his agenda request for an executive session to discuss labor negotiations and personnel issues.

31. Miller did not respond to my email requesting information on the labor negotiation item or who the personnel matter(s) were regarding.

32. Similarly, on July 22, 2025, I responded to another email from Miller requesting an executive session to discuss personnel matters.

33. Again, Miller did not provide information on who the personnel matter was regarding.

Page 4 – DECLARATION OF KRISTIN YUILLE

34.    At the October 1, 2025, Board business meeting, Miller requested discussion on a potential agenda topic, and neither Commissioner Chuck nor Commissioner Hall entertained the motion.

35.    At the November 5, 2025, Board business meeting, Miller requested discussion on a potential agenda topic, and neither Commissioner Chuck nor Commissioner Hall entertained the motion.

36.    At the November 26, 2025, Board business meeting, Miller made a motion to review agenda items, but Commissioner Chuck and Commissioner Hall declined to second the motion, and it failed.

37.    At the March 18, 2026, meeting, Miller made a motion to bring back an agenda item to the next meeting, and Commissioner Chuck declined to second the motion, and it failed.

38.    At the April 3, 2026, Board business meeting, an item of discussion was for "Agenda Topics." One of the topics raised by Miller was a request for a Special Meeting with Commissioner Chuck and the Finance Director so he could better understand the Board's budget line items. Commissioner Chuck declined to approve scheduling a Special Meeting for that purpose, and indicated Miller could reach out to the Finance Director with his questions on his own.

39.    Miller proposed several other agenda topics at the April 3rd Board business meeting, which were matters that had not gone through legal review, were inquiries Miller could have made outside of the business meeting, or were not actionable items for the Board.

40.    Miller's statements and actions have greatly disrupted Lincoln County and its employees.

41.    The County has not obstructed Miller's ability to do his job, and the items he complains about were implemented by the County to protect its staff and to limit any disruptions to the County's day-to-day operations.

Page 5 – DECLARATION OF KRISTIN YUILLE

42.    Allowing Miller to have an office closer to where County support staff work and allowing Miller to attend the Board management meetings with other employees would be a severe detriment to the County's ability to conduct its business operations.

43.    Key employees working in the County courthouse administration office choose to work from home when Board business meetings occur at the courthouse due to Miller's disruptive behavior. Miller is widely perceived to have encouraged members of the public to attack the County government in various ways, including, by encouraging public comment consisting of personal attacks on staff, a constant stream of public records requests, and, in one instance, reportedly advising a constituent to sue the County.

I hereby declare that the above statements are true to the best of my knowledge and belief and understand that they are made for use as evidence in court and are subject to penalty for perjury.

DATED:  April 14, 2026.

_____
Kristin Yuille

Page 6 – DECLARATION OF KRISTIN YUILLE

Commissioners' Journal
RECORDED IN LINCOLN     **CJ2021-252**
07/28/2021 1:49:47 PM
Dana Jenkins, County Clerk

# BEFORE THE BOARD OF COMMISSIONERS

# FOR LINCOLN COUNTY, OREGON

ORDINANCE # 517

---

**Establishing the Position of County Administrator and declaring an emergency.**

---

WHEREAS Lincoln County, after careful consideration of the roles and responsibilities of the County Management Team made up of County Elected Officials and Department Directors, has determined that the position of County Administrator should be established and filled to exercise administrative authority over specific areas of County operations as determined by the Board of Commissioners; and

WHEREAS upcoming retirements of long-time personnel, who have performed numerous administrative duties for the County, necessitates the creation of the position to begin the next fiscal year to continue effectively administering County operations; therefore, it is necessary for this Ordinance to be adopted by July 1, 2021, and an emergency is declared to exist to allow adoption of this Ordinance; and

WHEREAS this position shall exercise the duties and have the responsibilities as set forth in this Ordinance. Those duties and responsibilities shall be reviewed no later than 24 months after adoption of this Ordinance to see if any changes in those duties and responsibilities are warranted.

**NOW, THEREFORE, IT IS HEREBY ORDAINED AS FOLLOWS:**

**SECTION 1.**
Section 2 of this Ordinance is added to and made a part of LCC Chapter 7, General Administration, by adding LCC 7.205 through 7.245, County Administrator.

**SECTION 2.**
                    **COUNTY ADMINISTRATOR**

**7.205 Purpose of LCC 7.205 to 7.245**
**The Board finds and determines that the interests of the County will be best served by creating and delegating certain administrative authority of the Board to a**

Page 1 -- ORDINANCE #  517

Note: Matter in **boldfaced** type in an amended section is new; matter in [*italic and bracketed*] is existing ordinance to be omitted. New sections are in **boldfaced** type.

**Ex. A**
**Page 1 of 6**

County Administrator who will be responsible to the Board for the administration of the duties specified by this Ordinance.

**7.210 Definitions for LCC 7.205 to 7.245**

The following terms used in this Chapter shall have the meanings set forth below:

(1) "Elected Official" means and includes the following Lincoln County elected officials: the Board of Commissioners, the Sheriff, the Clerk, the Assessor, and the Treasurer. "Elected Official" also means and includes the District Attorney, a state elected official.

(2) "Department Directors" means the directors of the following Departments: County Counsel, Health and Human Services, Transportation Service District, Community Justice, Surveyor, Planning and Development, Public Works, Information Technology, Finance, and Personnel. The Board may periodically adjust the Department Directors' designations, and any changes shall not require an amendment of this Chapter. The new County Administrator shall also be a Department Director.

(3) "Liaison Commissioner" means the member of the Board assigned by the Board to one or more County departments or offices, committees, or agencies for purposes of being informed about issues pertinent to the department, office, committee or agency, and not for administrative purposes. It is the responsibility of the Liaison Commissioner to communicate information to the Board.

(4) "Management Team" means all Department Directors and Elected Officials.

**7.215 Position of County Administrator Created**

The position of County Administrator is hereby created. The County Administrator shall act as the head of administration for the County and is delegated by the Board of Commissioners, acting as district governing body, the same authority for all County service districts established under ORS Chapter 451. The position shall be a director of the department of County Administration.

**7.220 Appointment, Removal**

(1) The County Administrator shall be appointed by an Order of the Board for an indefinite term. The County Administrator is an at-will employee and may be removed at the pleasure of the Board, consistent with any applicable employment agreement and this Chapter.

(2) The County Administrator may be tentatively removed by a majority vote of the Board Commissioners at a meeting held in conformance with Oregon's Public Meetings Laws. Upon such a majority vote, the Board shall adopt a Preliminary Order setting forth the reasons for the County Administrator's removal. The County Administrator may reply, in writing, and may request an opportunity to be heard at a meeting of the Board, which shall be an executive session unless the County

Page 2 -- ORDINANCE # 517

Note: Matter in **boldfaced** type in an amended section is new; matter in [*italic and bracketed*] is existing ordinance to be omitted. New sections are in **boldfaced** type.

Office of Lincoln County Legal Counsel
225 West Olive Street, Room 110
Newport, Oregon 97365
(541) 265-4108

**Ex. A**

**Page 2 of 6**

Administrator requests the matter be conducted in open session. After such hearing of the Board, if one is requested, and after full consideration, the Board may adopt a Final Order of removal. By the Preliminary Order, the Board may suspend the County Administrator from duty, but shall, during the term of such suspension, cause the County Administrator to be paid any salary and fringe benefit amounts due the County Administrator as the result of the duly executed employment agreement in effect at the time of the Preliminary Order; provided, however, that no such payment shall be made if the County Administrator's removal is for any reason involving moral turpitude, lack of integrity or other terms as may be found in the employment agreement.

(3) Nothing contained in this section shall be construed to prohibit the Board and the County Administrator from negotiating and entering into a separation agreement.

**7.225 Vacancy, Absence or Disability.**

(1) When a permanent vacancy occurs in the position of County Administrator, the Board shall designate an Acting County Administrator until such time as a new County Administrator is appointed. The Acting County Administrator shall have all powers and duties conferred on the County Administrator by this Chapter.

(2) At the request of the County Administrator, or on its own motion, the Board may designate a person in writing to temporarily assume the administrative position of the County to exercise and perform the County Administrator's powers and duties during the County Administrator's temporary absence or disability.

**7.230 Authority**

(1) The County Administrator, as the chief administrator, shall be responsible to the Board of Commissioners for the overall administration and management of the County and its service districts. The County Administrator shall exercise no authority over the actions of Elected Officials or the County Counsel. The County Counsel shall report directly to the Board. The County Administrator shall have authority over departmental budgets through the County budget process, and shall otherwise coordinate services, projects and activities of departmental directors and elected officials who have responsibilities for their respective services and functions.

(2) The Board of Commissioners hereby delegates to the County Administrator broad authority to perform the County Administrator's job functions. The County Administrator is responsible to the Board for the manner of the County Administrator's administration. The Board reserves to itself all of its legislative and

Page 3 -- ORDINANCE # <u>517</u>

Note: Matter in **boldfaced** type in an amended section is new; matter in [*italic and bracketed*] is existing ordinance to be omitted. New sections are in **boldfaced** type.

Office of Lincoln County Legal Counsel
225 West Olive Street, Room 110
Newport, Oregon 97365
(541) 265-4108

Ex. A
Page 3 of 6

judicial or quasi-judicial authority, unless otherwise delegated by the LCC or other action of the Board.

(3) The County Administrator shall have the specific authority to perform all day-to-day functions necessary for the administration and management of County affairs and the affairs of County service districts including coordination with Departmental Directors and Elected Officials.  Such authority includes, but is not limited to, the following:

(a) Direct and coordinate the overall management of County government in accordance with policies set by the Board and applicable laws.

(b) Provide the proper administration of all codes, ordinances, orders and resolutions of the Board, all contracts entered by the County, and provide for the enforcement of all policies, rules, procedures, orders and regulations duly adopted by the Board.

(c) At the direction and in coordination with members of the Board, select, appoint and dismiss Department Directors, except Elected Officials and County Counsel, in accordance with federal and state laws and guidelines, applicable contracts and personnel policies adopted by the Board; and advise the Board of the reasons and process used in any selections, appointments or dismissals. All final employment decisions for the Department Directors shall be made by the Board. Prior to initiating any disciplinary action leading to dismissal, the County Administrator shall consult with County Counsel and the Personnel Director.

(d) Coordinate the work of all offices, departments and agencies, and devise ways and means whereby efficiency and economy may be secured in the operation of all offices, departments and agencies.

(e) Prepare and submit to the Board and Budget Committee an annual budget prepared with the Finance Director and Management Team, and a long-range capital improvement and expenditure program, along with a financial plan for raising revenue.

(f) Working with Public Works and the Facilities division, direct the use, maintenance and custody of all County property, buildings, works and improvements according to policies promulgated by the Board.

7.235 Interaction with County Administrator, Employees

In the exercise of their authority as members of the governing body of the County, Board members may individually, or as a group in a public meeting, discuss fully and freely with the County Administrator any matter pertaining to County affairs or the interest of the County. Individual Board members may also consult with and seek assistance from the County Administrator on their role as Liaison Commissioner.  Nothing in this section shall be construed to prohibit a Board

Page 4 -- ORDINANCE # 517

Note: Matter in **boldfaced** type in an amended section is new; matter in [*italic and bracketed*] is existing ordinance to be omitted. New sections are in **boldfaced** type.

Office of Lincoln County Legal Counsel
225 West Olive Street, Room 110
Newport, Oregon 97365
(541) 265-4108

member as an elected official, consistent with law and County policy, from performing the Board member's role in making inquiries of County employees within departments or offices, or members of committees or agencies to which they are assigned concerning day-to-day conduct of County affairs or otherwise with Department Directors or other Elected Officials.  The Board may consult with County Counsel at any time.

**7.240 Review of Position Duties**

While the Board of Commissioners reserves all rights to evaluate the performance of the County Administrator and take such actions as are consistent with this Chapter, it is understood that this is the first formal Administrator position in the County's history, and periodic evaluations of the duties and responsibilities of the position are needed to ensure the purposes identified herein are being met. Therefore, the Board of Commissioners and County Administrator, in consultation with County Counsel and the Management Team, shall no later than 24 months after adoption of these provisions, conduct the first thorough analysis of the roles, responsibilities, duties and effectiveness of this position to allow the Board to determine if changes to this Ordinance are warranted, including delegation of greater or lesser authority to the County Administrator, and necessary changes as determined by the Board can thereafter be adopted.  Nothing in this section precludes any Board initiated changes earlier than 24 months, nor is this intended to replace annual or more frequent evaluations of the performance of the holder of the position.

**7.245 Severability Clause**

Any judgment or declaration by any court of competent jurisdiction that any portion of this Chapter is unconstitutional or invalid shall not invalidate any other portion of this Chapter.

**SECTION 4.**

**Effective date; emergency clause**

This Ordinance was first read on _____ and a second reading was made on _____. To carry out the intent of this Ordinance to put into place the position by the beginning of the next fiscal year, an emergency is declared to exist, and the Ordinance shall take effect July _____, 2021.

Page 5 -- ORDINANCE # _517_

Note: Matter in **boldfaced** type in an amended section is new; matter in [*italic and bracketed*] is existing ordinance to be omitted. New sections are in **boldfaced** type.

Office of Lincoln County Legal Counsel
225 West Olive Street, Room 110
Newport, Oregon 97365
(541) 265-4108

Ex. A
Page 5 of 6

**SECTION 5.**

The Board of Commissioners in enacting this Ordinance is concomitantly sitting and acting as the Governing Body of all Lincoln County Countywide Service Districts (ORS Chapter 451 Districts) including the Lincoln County Extension Service District, the Lincoln County Transportation Service District, the Lincoln County Animal Services District, and Lincoln County Solid Waste Services District.

**Dated this __6th__ day of __July__, 2021**

## LINCOLN COUNTY BOARD OF COMMISSIONERS[1]

_____
Doug Hunt, Chair

_____
Claire Hall, Commissioner

_____
Kaety Jacobson, Commissioner

ATTESTED TO:

_____
Kristi Peter, Recorder

APPROVED AS TO FORM:

_____
Wayne Belmont, County Counsel

---

[1] And acting as the Governing Body of all Lincoln County Countywide Service Districts (ORS Chapter 451 Districts) including the Lincoln County Extension Service District, the Lincoln County Transportation Service District, the Lincoln County Animal Services District, and Lincoln County Solid Waste Services District.

Page 6 -- ORDINANCE # __517__

Note: Matter in **boldfaced** type in an amended section is new; matter in [_italic and bracketed_] is existing ordinance to be omitted. New sections are in **boldfaced** type.

**Ex. A**
**Page 6 of 6**



**Citizens**

**Sheriff** (Elected)
- Patrol
- Jail
- Civil
- Emergency Management
- Animal Shelter
- Boat Patrol
- Search &Rescue

**DA** (Elected)
- Prosecution
- Child Support Enforcement
- Victim Assistance

**Assessor** (Elected)
- Valuation
- Exemptions
- Special Use
- Tax Roll
- Ownership
- Mapping

**Treasurer** (Elected)
- Tax Collection

**Clerk** (Elected)
- Elections
- Recording
- PVAB

**County Counsel**
- Risk Management
- Law Library

**County Commissioners** (Elected)

**County Administrator**
- Parks
- Veterans Services

**Health and Human Services**
- Public Health
- Primary Care
- Developmental Disabilities
- Behavioral Health
- Winter Shelter

**Public Works / Roads**
- Fleet Management
- Solid Waste
- Facilities

**Finance**
- Payroll
- Budget
- Audit

**Human Resources**
- Recruitment
- Training
- Benefits

**Community Corrections**
- Parole
- Juvenile

**Planning & Development**
- Planning
- Building Inspections
- Addressing

**Transit**
- Dial-A-Ride
- Bus Service

**Surveyor**
- Property Management
- GIS

**Information Technology**

**Lincoln County**
**OREGON**

**Ex. B**
**1 of 1**

# Impacts of Commissioner Miller's Actions

- Witness: "The office has been really impacted by this. The team we had on September 17 is not the team we have now. [Crying] It's like 'trauma,' and I don't use that term lightly. People are really traumatized…It wasn't just the people at the dais, it was the people in the audience, other management team members, people in offices, not at the meeting, that really felt bullied, that felt like Casey [Miller] is unsafe. They don't want to meet with him. I've had many conversations about I don't want to meet with this person. "

- Witness: "The concern that staff has expressed to me, this is not just Board of Commissioners staff or County administration staff, even department heads are saying, 'I don't know if I can trust this individual? He may throw me under the bus,' and they're scared to death of that, so there are others who don't even want to be in a meeting with him."

- Witness: "I think for some it is irreparable; maybe for a lot, it's irreparable. That being said, I also think that I'm thinking of directors who have made comments to me. Most are professional and could continue to work with the individual but I think it would be difficult; but I also realize that he's an elected official and we don't get to just say this isn't working."

- Witness: "For me, I don't trust one of my commissioners, and I am saddened that even though he worked in the County for so many years, he did not seem to understand. This is just bad for the County to do something like this…This whole process has created enough of a disruption that I have just exited the conversation. That's an impact. We're just not going to be part of this discord."

- Witness: "For Casey [Miller] to act the way he did to county employees, I've never been fearful of my position, but I felt unsafe as well. I have relationships with commissioners. I've felt really confident in where I stand in Lincoln County. But after the meeting, I walked away thinking I'm nobody. And they don't understand me at all…People contacted me thinking I was still in that role with complaints and questions and a lot of fear. One person said, "it felt like we were going through a divorce and we were the kids of the divorce and watching our parents fight it out." It made people really uncomfortable and fearful for their positions. I was more floored and upset for the people that were sitting up there. The situation itself is pretty mind blowing."

- Witness: "He blew up the office. He blew us apart. Before this event everybody came to work with joy. It was a perfect place to work, including our fearless leader who can be a little weird at times. It was someplace that wasn't like I don't want to go to work or I want to call in sick. We work well together. We really are an office family with everything that means. He really hurt people in that attack."

- Witness: "It made me feel really insecure. Since I've been in the job I've been pretty supremely confident. For part of the period, home wasn't a safe place and the office was pretty special and that safety and motivation to be there has been disturbed."

- Witness: "I can only describe it as traumatic for some people and it had a ripple effect through the workplace. A lot of employees watched that video because they heard about it. It reinforced the trauma of it in a way."

- Witness: "He's made me physically ill. He's jeopardized my income. I feel unsafe with him."

- Witness: "It just brought me back into environment [that was] very toxic…When this happened, he publicly put staff and the people he works with down, thinking he's being transparent. It just brought me back to that place and seeing people coming from the meeting crying and headed to the bathroom, watching people leave for day. The office basically emptied out. It took me to a place where I didn't want to be. I didn't want to be in a hostile work environment, where you can't say anything."

- Witness: "That's why it hurt me so badly to think what I had fancied to be an oasis from that kind of thing is now we're there. So I think there's, to use word permanent damage might be overstated – all of a sudden our collaborative nature was blown up in knife fight in a public setting during a meeting, a calculated political takedown, oh, wow, and how do we undo that? How do you un-ring the bell?"

Ex. C
1 of 1