**Commissioner Miller's Report – 9.18.24**

Introductory comments:

I work on many issues of concern as a county commissioner. Every day and every week there are new challenges, opportunities, and activity. I am reporting on just a few items today. While this report might seem extensive. There are many other matters which I need to review with you all. In my past "reports" I feel that I have not been articulate enough in my presentation and as result today I want to very clear and deliberate because not only are these important issues but, in an effort, to do the work and do quality work I not only want you and the community to be aware of my activity but also to have you weigh in on the activity I am engaging in.

This Report's Overview:

I ask your patience to hear my full report today. I will be reading it in full. I have copies for you. And I ask that this report be entered into the public record in full as I have read it today and as it is printed before me.

I would generally classify the topic categories today as systemic management, public records and meeting laws, service programs and communication.

In my report today I will propose some questions to staff and commission. I believe that I and the community deserve answers to these questions. I am being very deliberate in proposing these these questions and have highlighted them in yellow. I also recognize that these are my truths and my analysis. You may not be comfortable answering them today. I'll understand if you need time to respond. This is lengthy report, and this may be the first time you've considered these points of view that I am proposing.

I feel it's important for me to emphasize that I am trying to seek the truth. It is not necessary that I be "right". Its is ok in my mind for you to disagree with me. The beauty of having three commissioners is that there is strength in our collective governing body. I need not be left alone to govern and more than often I desire your perspectives and your wisdom. I think you'll see that if there is a overarching

theme today in my report one of them is that we conduct as much of our decision making process as possible in the public meeting context.

I believe that there are three commissioners elected very explicitly for a reason. We are here to utilize the totality of our governance. We three commissioners have been elected by our community to make decisions on their behalf. Public records and meeting laws are created to protect us so to that we are not excluded for the governance process and so that the community is ensured that the entire governing body is utilized for their benefit.

Sometimes in my discussions with a community member they are surprised to learn that public records and meeting laws do not allow me to make decisions or have substantive conversations with my fellow commissioners. It is indeed very difficult sometimes to refrain from a very human tendency to talk and communicate naturally with other humans. Especially you in our office. Nevertheless, that is the law and I take it very seriously.

Transparency. I want to add that my wife said to me the other day, "Casey, not everyone is comfortable being vulnerable as you are. It is not easy for everyone to share themselves." It is not my preference at all to make you intentionally uncomfortable and vulnerable with the information I am presenting and the questions that I seek answers to. It is not easy for me to question your decisions and ethics. I hope you will respect my process and please understand that I am trying to do my best as an elected official and seek clarity so that I can do the best work and make the most informed decisions that I can. I value good and open communication and do have high expectation that you and our staff present myself and our entire Board with the facts (rather than opinions). I want to be sure that what motivates me is not anger, jealousy or fear. Rather, equity, truth, fairness and respect are just some of the values I try to align myself with each and every day.

I want to remind everyone of the county's mission statement. The mission of Lincoln County is to **provide essential public services both legally required and locally desired in an efficient, effective, and respectful manner.**

I believe it to be a beautiful statement of why we are here. Our mission statement motivates me to provide the best possible customer service to our community and

staff. We all have point of view. I always hope yours includes our mission to empower our community to have better lives, to grow and thrive with help from the services provide by Lincoln County government.

To the reports…


ADMINSTRATOR EVALAUTION

Over the last several weeks I have been participating in the evaluation of our first ever county administrator as have my cohorts. Ordinance #517 established the position of County administrator. The first ever in Lincoln County's history.

The position is a BIG deal and I quote from the ordinance: "The County Administrator shall have the specific authority to perform all day-to-day functions necessary for the administration and management of County".

I think we should exercise the utmost scrutiny and precision in evaluating the performance of the position. I think we should also cut ourselves (meaning commissioners, staff and the administrator himself) some slack in our efforts to evaluate the position.

The process has been a bit of a roller coaster from my perspective. There have been some confusing recommendations about the process. I am still trying to work through all of that has unfolded.

An initial email form HR suggested that the final evaluation be done by Chair and administrator only. This was inconsistent with the process as I understood it described in: "Process/Procedure for County Administrator Evaluation". I pushed back on that recommendation. I brought this up in our previous BOC meeting. I suggested it was unwise. I felt it would be of value to have an executive session to hear from my cohorts and understand in more detail from them.  I don't think I received a solid answer from either commissioner in that meeting but eventually an email confirmed we were back on schedule for executive session on the 18th.

Additionally, I had yet to see the "The HR Director will notify the County Administrator (CA) to provide a list accomplishments/contributions over the past

year within 2 weeks." This is step three in "Process/Procedure for County Administrator Evaluation"

QUESTION:

Have either of my commissioners received the County Administrator (CA) list accomplishments/contributions over the past year? I ask that provide that to me this list, please.

Additionally, as you are aware our county counsel as provided back up to when administrator has been he has been out several times due to legitimate family issues. I also think it's prudent that we receive a list of activities that counsel is performing on our administrators' behalf while he has been out. I think this will help develop and accurate picture of who is doing what and who should do what when the position is vacant. Not that Ordinance #517 states: "When a permanent vacancy occurs in the position of County Administrator, the Board shall designate an Acting County Administrator until such time as a new County Administrator is appointed." While a medial absence may not rise to the level of "permanent vacancy" as a practical matter, again, I think it's prudent to be more structured than we have been in the past.

QUESTION:

Do you also think it would be informative to have a list of functions and activities that counsel has done or would feel comfortable doing in the absence of our administrator as a staff report?

Continuing…

I arrived to work last Monday to discover that administrator had been sent his combined written evaluations by all three commissioners in an email. Basically, two weeks advance of the actual timeline described by our ""Process/Procedure for County Administrator Evaluation". In fairness to him this was awkward… and felt premature to me.

The next day, HR and counsel recommended that we abandon the procedure his e evaluation in executive session and instead were given options for administrator next steps in an email.

I asked for clarity on a number of details in that email INLCUDING if each commissioner was blind copied on the email and if the email was intended to be a "poll of commissioners" to reach a decision. I have received a response to several of these questions from HR.

QUESTION:

Did you all three receive an email from HR asking for a decision sent by HR with the recommendation and the choices of county administrator next steps? If so, did you also see this as a poll through email to arrive at a decision?

When I met with our administrator to last week to discuss it all. He was unaware that this email was sent to all three commissioners. And disagreed with the terms that were presented as options as next steps. They were not a reelection of his desire for continuation.

At this point am confused, administrator Johnson is confused. I've spent a great deal of time preparing for an executive session to have a fair, equitable and dynamic performance-based conversation with or without Administrator Johnson.

In my opinion the next best step is that all of us meet to discuss the administrator's role and performance in executive session. Let's compare notes and make sure that we are on the same page about what constitutes performance. Let's be sure to evaluate both style and substance.

I am not thrilled at all about our current "management evaluation form". It seems to me that the form is skewed toward "what we think of the performance" instead of what "is being performed".  Both are important.

Again. I'm not crazy with this tool we've been provided. It leaves much to be desired from me. I believe "If you can name you can tame it". These are broad categories in this evaluation process but not specifics. I am prepared to provide details and hope my cohorts are ready as well. I want to be "hearing and identifying" from you those specifics in executive session as planned.

QUESTION:

Do all three of you agree that it would be of benefit for us to meet in executive session to discuss the administrator's performance? If not, what is the best alternative from you point of view?

In the interim I suggest we let Administrator Johnson get back to the work he is doing for us. And I can talk with him about bringing a you an exit strategy and succession plan for his remaining tenure in the coming months that allows him time to finish and/or hand over the projects he has been tasked within manor that captures the best of what has been provided to us from him and allows us also to create clear and reasonable expectations of him during his final tenure and prepares us with better equipped and clear expectations for future individuals who work in the position.

DEFELCTION

I had the expectation that deflection would be on today's agenda. I believe that the media and stakeholders, Sheriff, DA, Judge Bachardt, and County Administrator, also thought we would see some form of deflection discussion on our agenda today. I asked administrator Johnson to prepare a report for us review on the 18th. He has done that. It is in draft from. I spoke with Administrator Johnson at length about his draft report on Friday.

So, why don't we see it here on "Discussion" as an agenda item?

At our Monday morning staff meeting (Commissioner Jacobson was absent) we reviewed our agenda for the coming BOC regular meeting. This is routine procedure during our staff meetings. I asked why it was not on the agenda and suggested that we "at least update our community and stakeholders about where we are in the process of defection program development" and that we place that as an agenda item under discussion.  However, my interpretation of what County Counsel Yuille said was that it was an administrative decision at this time. Commissioner Hall reinforced that interpretation. And that it should not be on the agenda.

I am careful to "deliberate and argue" in our staff meeting. The reason for that will be illustrated in further in this document when I report on Are Staff Meeting are Public Meetings?

The reason that you are hearing from me about deflection in "Commissioner Reports" is that from my point of view and interpretation of the conversation that happened in our staff meeting is that Counsel Yuille said deflection is an administrative decision. Commissioner Hall agrees with that. She is still reviewing the administrator's, staff report and other materials related to deflection programming.

Hold that thought. I am going to back in the timeline for a moment.

The purpose of defection from my point of view is that we get our community members who are caught the cycle of substance abuse the treatment that can help them. I believe we have an urgency to facilitate that mission. While not all counties are creating defection programming. I assume my fellow commissioners are committed to some sort of program to help our individuals and families.

How we execute that defection program is still in flux. I am open to choosing a process that gets the most people through treatment as possible while maintaining the fiscal sustainability and effectiveness of the program created. It is a complex program, and we should all be committed to creating a robust and effective process that that gives our community members the greatest chance of success while being a fiscally responsible allocation of our taxpayer's dollars, and a sustainable program especially if deflection is successful. This program needs to respect individual's private health care information and where possible allow them to have a clean record and a productive life without any legal ramifications as they move forward in their lives after completing deflection.

I have spent months working with the Local Public Safety Coordinating Councils – Defection Subcommittee and believe what I have seen happening to be overall good work with the good intentions. Commissioners had approved the grant concept paper submitted by the Sheriff's office in alignment with the Oregon Department of Justice framework and application process, administrator Johnson had reviewed fiscal aspects of the program and produced a memo for its fiscal accountability, and DA requested the deflection job description be posted for hire.

Several weeks ago, County counsel said in an email that the defection coordination position was on hold. In a subsequent meeting the following week with HR, Counsel, Health and Human Services, Community Corrections, DA, Sheriff, Administrator, and me. Counsel Yuille explicitly stated that The Commissioners (meaning Kaety and Claire) decided to not to use the Sheriff's model for the deflection program.

**Question & Clarification:**

Where are my fellow at Commissioners currently positioned regarding the defection program? What is the process and procedure as you understand it or would like it to unfold at this time? If not now when and will we continue the discussion?

PUBLIC MEETING, SERIAL MEETING, EXCLUSIVE DESCSION MAKING and/or ADMINSTRATIVE DESCSION?

I have reached out to the Oregon Government Ethics Commission to seek guidance to ascertain if the activity (or decision) that may have occurred between County Counsel and Board of Commissioners in regard to the defection program constitutes a serial meeting and is a violation of public records and meeting laws. They have not responded to my inquiry at this time.

As stated by counsel, she said she had met with you and affirmed decisively, as all in persons in our management meeting can attest (she clearly stated to us more than once) that you had made the decision to not proceed with the program as described by the Sheriff's grant proposal and have the deflection program coordinator in the DA's office, etc.

QUESTION:

A.) Did you indeed meet with Counsel Yuille and decide to abort the sheriff's proposed program for deflection as proposed and if so is this not a serial meeting?

My interpretation is that the reason public records and meeting laws prohibit serial meetings is to protect all involved in the governance process and

ensure all involved do not exclude fellow elected officials from the decisions and/or that they also occur outside of public discourse.

B.) It is not true. Your did not meet and make a decision. Counsel Yuille is gravely misrepresented the content of her conversation with Claire and Kaety.

C.) Its is not a serial meeting, not prohibited from public records and meeting laws and as Counsel Yuille might attest is an administrative decision, it is acceptable for the BOC to make behind certain decisions behind closed doors. If so… how do we decide what is "administrative" vs. "What is public"?

QUESTION: I respectfully, ask your consensus that we also ask our legal Department to produce a staff report for review by the Board of Commissioners of what is "administrative"? What are types of content, procedures, and decisions that are administrative in nature and are legally excluded from the public meeting context and allowed by the BOC outside of the public meeting setting or by other staff on our behalf.

I summary, if it's not a meeting law violation and something you willfully excluded me from, I would like to ask the three of you to consider your process regarding this decision. It feels disrespectful to me and as a fellow commissioner I would like you to consider that.

I will certainly let you know when OGEC reaches out to me and how we proceed might proceed with training to appropriately move forward with a better understanding and process for adhering to public records and meeting laws.

ARE OUR STAFF MEETINGS PUBLIC MEETINGS OR NOT?

I want you to be aware of another "situation" I have sent to the Oregon Government Ethics Commission. Monday I reached out OGEC to seek guidance and ask them to help us ascertain if our biweekly staff meeting held prior to our regular weekly meeting is a public meeting or not.

Public record and meeting law require us to record our meetings and provide a detailed agenda. We do neither for our staff meetings. We do keep minutes for these meetings, and they are largely reflective of the content of our meetings

which is "reviewing schedules, vacations, appointments, and the regular BOC meeting agenda."

I feel these meetings are a missed opportunity to discuss in depth the important matters of the upcoming regular meeting agenda. I feel a determination from OGEC will help us commit to a more thorough and technically accurate process and allow as more confidence and breathing room to have substantive conversations that are desperately needed from my perspective.

I want to describe some of the process that led me to this point over the last year(s).

In a brief informational training given by OGEC at the Association of Counties event I began to feel more certain we needed address our process. Additionally, several bills that were passed by the 2023 Legislative Assembly updated public records and meeting law.

I asked for our counsel's legal interpretation about our staff meetings in writing (I can provide that email and memo). Neither legal or our administrator responded to those inquiries.

I turned to the only option I felt would provide an unbiased determination and reached out to OCEC.

They said the following:

*"Currently, we are unable to give advice on the application of Public Meetings Law."*

*We will, however, be able to start offering trainings on Public Meetings Law in 2024. We would be happy to set-up a training that is customized to your board and staff. As I am in the process of developing the curriculum for the Public Meetings Law trainings, I would like to know more about your particular situation because it probably applies to other public bodies as well. Do you have time for a phone call either this week or next?"*

I along with our Public Information Officer I met with a OGEC representative virtually. They were not able to provide advice at the time but did suggest:

**Ex. 1**
**Page 10 of 12**

*"Thank you again for making time to discuss some questions you have regarding Public Meetings Law. As I mentioned, House Bill 2805 provides some additional clarification around serial meetings."*

In 2024, OGEC responded:

*I am following-up to let you know that we now have the authority to offer advice and guidance on Public Meetings Law for future and hypothetical situations. If you would like to submit a request for advice, rather informal, staff opinion, or Commission advisory opinion, you are welcome to send it directly to me or mail@ogec.oregon.gov and it will be assigned to one of staff who are available.*

Additionally, in an effort to facilitate needed conversations between staff, counsel and administrator I initiated a "regular BOC staff meeting" with Board Chair (minus the other elected officials). That has been a needed improvement for staff communication and coordination, but I still feel uncomfortable about our biweekly staff meeting that in my option should be better titled "Office Meeting and Board Briefing".

I am happy to provide my request to OGEC with all the support materials provided to OGEC. It is a full description of our current process, approach to our current staff meetings and even offers a corrective measure(s) should you decide to take those measures proactively to resolve this problem.

Question:

Would you rather wait for a determination made by OGEC?

Would you like to request OGEC training for our staff regardless of OGEC determination on this issue?

We can very easily begin recording these meetings and archiving them online, provide a detailed agenda, keep detailed minutes, livestream these meetings and provide a continuous link to that meeting rather than "upon request. How does this sound to you?

That is the end of my reports today.

In future reports expect the following in writing:

- Board Liaison (Department heads and committee and boards) development needed (resolution crafted)
- Johnson Bridge update needed
- Agenda Resolution (how we decide what is on the agenda)
- Updates on OGEC requests – what I have submitted
- Ordinance 517 evaluation
- Updates on finance director position, DA office positions, LPSCC subcommittee public meeting process


Respectfully submitted in this meeting for the public record.


Casey Miller, Chair
Lincoln County Board of Commissioners