IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CASEY MILLER

                Plaintiff,

      v.

LINCOLN COUNTY, DAVID
COLLIER, KELLY MEININGER,
as personal representative of the
Estate of Claire Hall, WALTER
CHUCK, KRISTIN YUILLE

                Defendants.

Civ. No. 6:26-cv-00499-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Motion for Preliminary Injunction, ECF No. 11, filed by Plaintiff Casey Miller. The Court heard oral arguments on June 16, 2026. ECF No. 30. For the reasons set forth below, the motion is GRANTED.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

Page 1 – OPINION AND ORDER

balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## DISCUSSION

### I.      Factual Background

Plaintiff is a County Commissioner for Lincoln County, Oregon and was sworn into that position in January 2023. Yuille Decl. ¶ 7, ECF No. 14.

Defendant Lincoln County is a public body in the State of Oregon and the county government of Lincoln County, Oregon. First Amend. Compl. ("FAC") ¶ 6, ECF No. 24.

Defendant David Collier is the human resources director for Defendant Lincoln County.  Collier Decl. ¶ 1, ECF No. 13.

Page 2 – OPINION AND ORDER

Defendant Kristin Yuille is the County Counsel for Defendant Lincoln County. Yuille Decl. ¶ 1.

Defendant Walter Chuck is a County Commissioner for Defendant Lincoln County, who joined the Board of Commissioners in February 2025 after the resignation of the previous Commissioner. Yuille Decl. ¶ 9.

Defendant Kelly Meininger is the personal representative of the estate of Claire Hall. FAC ¶ 8. Claire Hall was a County Commissioner for Defendant Lincoln County and also served as Acting County Administrator from January 2025 until her death on January 4, 2026. *Id.*; Yuille Decl. ¶¶12-14.

On September 18, 2024, the Board of Commissioners held a meeting at which Plaintiff read a statement. Miller Decl. ¶ 2. Plaintiff submitted the text of the statement he read as Exhibit 1 to his Declaration. *Id.*

The parties describe the statement differently.

Plaintiff states that "[he] raised concerns that my fellow commissioners were violating public meeting laws by having substantive conversations of County matters outside of the context of public meetings and the serial meeting prohibitions of the public meeting laws." *Id.* ¶ 3.

Defendants state that "[a]t this meeting, Miller disclosed confidential personnel matters, medical information about a County employee, disrespected fellow Commissioners and County staff, and made comments that reflected poorly on the County and were seemingly for personal gain." Yuille Decl. ¶ 18.

Plaintiff submitted an exhibit purporting to be his prepared speech from that night.  Pl. Ex. 1. Defendants do not so much as offer a quote from Plaintiff's speech that night, nor do they dispute the veracity of Plaintiff's Exhibit 1.

The printed copy of Plaintiff's remarks at the meeting on September 18, 2024, refer to five people by name: the other two County Commissioners (including Claire Hall), the County Administrator (Tim Johnson, who resigned in January 2025), and Defendant Kristen Yuille. Ex 1 at 6-11.  The speech is particularly critical of Defendant Yuille and Commissioner Hall. The topics do not seem particularly striking for a public board, though there are some statements that one could describe as contentious or accusatory.

The day after Plaintiff gave his statement at the meeting, Defendant Collier contacted Plaintiff by email to inform Plaintiff that complaints had been made to human resources regarding Plaintiff's comments at the meeting, Def. Response at 6, and that the County would hire an outside investigator to investigate the complaints. Collier Decl. Ex 1 at 4. Additionally, Plaintiff could no longer attend management team meetings until the investigation was completed[1]; Plaintiff had to work through one assigned staff member and have no contact with other staff; and Plaintiff could no longer use his office in the County's courthouse. Collier Decl. Ex. 1 at 1-2; Yuille Decl. ¶ 22 Instead, the County rented him an office elsewhere. Yuille Decl. ¶ 23.

---

[1] Management team meetings are for "all department directors and elected officials," are "informal," and are for the "sole purpose of sharing information between departments." Collier Decl. ¶ 2-3.

Page 4 – OPINION AND ORDER

The investigation resulted in Plaintiff being exonerated for bullying and harassment, but he was found "to have violated the County's policy regarding the disclosure of personal information of discussing an employee's complaint, and that this action may have put the County in a negative light." Miller Decl. ¶ 20.

"As a result of Miller's behavior, the third-party investigation, and the impact Miller's actions had on the County, the County . . . implement[ed] a few security measures to ensure its staff's safety and the County's ability to run efficiently." Yuille Decl. ¶ 21.

Beginning in January 2025, Claire Hall was appointed Acting County Administrator in addition to her role as a Commissioner. She "delegated some administrative duties" to Defendants Yuille and Collier.

The parties agree that, to date, Plaintiff does not have regular access to his office at the County courthouse. Miller Decl. ¶ 32-33;Yuille Decl. ¶ 25 Nor have Defendants allowed Plaintiff to attend the management team meetings, despite the investigation being concluded. Miller Decl. ¶ 33; Yuille Decl. ¶ 25.

The parties have a strong disagreement about the process by which an item is placed on the agenda. Defendant Yuille describes a continuing, but undocumented, practice where placing an item goes one of two ways; either the Chair, the County Counsel, and the County Administrator agree to add an item, or two Commissioners agree together to add an item. Yuille Decl. ¶ 6. Additionally, agenda items "may also be rejected if they have not gone through legal review, which is required before placement on the agenda." *Id.* ¶ 29. Plaintiff alleges that "there has not been a clear,

Page 5 – OPINION AND ORDER

consistently applied, or formally adopted process ensuring that individual commissioners can place items on the agenda." Miller Decl. ¶ 5. He also disputes Defendant Yuille's explanation, saying that he does "not recall ever being asked to 'second' a request from another commissioner" and that no "formal process for doing so [was] ever communicated or applied." *Id.*

## II. Prohibitory Injunction

As a preliminary matter, Defendants assert that Plaintiff is seeking a mandatory injunction, which is subject to a higher standard than a prohibitory injunction. Def. Sur-Reply at 2-3. A prohibitory injunction seeks to maintain or return to the status quo ante, which is "the legally relevant relationship between the parties before the controversy arose." *Fellowship of Chirstian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023). On the other hand, a mandatory injunction seeks to "order[] a responsible party to take action." *Id.*

Here, Plaintiff seeks to return the status quo as he understands it: standard access to his office, attendance at management team meetings, and the ability to place items on the agenda for meetings of the Board of Commissioners.

Defendants agree that two of those items—the office and the management meetings—are part of the pre-September 19, 2024, status quo, and that Defendants have no intention of returning to that status quo. Any injunction to restore Plaintiff's access to his office and the right to attend management meetings would be prohibitory.

Page 6 – OPINION AND ORDER

The factual dispute is on the right to place items on the agenda. If Plaintiff is correct, then the injunction would be prohibitory. If Defendants are correct, and the injunction were to impose a new or different system for placing items on the agenda, then the injunction would be mandatory. However, for the reasons discussed below, the Court issues only a prohibitory injunction and so there is no need to embark on the mandatory injunction analysis.

## III.    Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Here, Plaintiff alleges a First Amendment retaliation claim under 42 § 1983. Such a claim has three prongs:

> An elected official's claim under 42 U.S.C. § 1983 for First Amendment retaliation by his elected peers begins with the elements of the plaintiff's prima facie case. . . . [T]he elected official bringing such a legal action has the initial burden of pleading and proving: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022). (internal quotation marks and citation omitted).

## A. Constitutionally Protected Activity

The first prong is not at issue, because "[t]he first prong is readily met when elected officials express their views and opinions." *Boquist,* 32 F.4th at 775. The Supreme Court has said, "The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy." *Houston Cmty. Coll. Sys. v. Wilson*, 595, U.S. 468, 478 (2022).

Here, Plaintiff was an elected official, and he spoke at a public meeting of the elected body on an array of topics, most of which, if not all, were directly about the body's policies and practices.[2] Plaintiff's speech was clearly protected by the First Amendment.

## B. Materially Adverse Action

"[A]n adverse action against an elected official is material when it prevent[s] [the elected official] from doing his job, deprive[s] him of authority he enjoyed by virtue of his popular election, or otherwise prevents him from enjoying the full range of rights and prerogatives that came with having been publicly elected[.]" *Boquist*, 32 F.4th at 777 (internal quotations and citations omitted).

---

[2] For example, Plaintiff spoke about the mandated review of the County Administrator, how power is delegated in the event of the County Administrator's absence, governmental rules and ethics about public meetings and the process of reaching a decision, and the status and process of getting state dollars for a kind of drug treatment program. Miller Decl. Ex. 1.

Page 8 – OPINION AND ORDER

Here, the Court focuses on two alleged adverse actions: restricting Plaintiff's access to his office and the County administrative building, and disallowing Plaintiff from attending management teams meetings.

Restricting Plaintiff's access to his office and the seat of government is an adverse action squarely within the holding in *Boquist*.

In *Boquist*, the plaintiff, Brian Boquist, was an Oregon state senator. *Id.* at 772. Boquist was part of a contingent of senators who walked out of the senate to prevent a quorum. The senate president stated that he could have Boquist and the others "arrested, physically detained, and imprisoned." *Id.* Boquist, speaking on the floor of the Oregon senate, said, "Mr. President, and if you send the state police to get me, Hell's coming to visit you personally." *Id.* Later that day, speaking to reporters, Boquist said, "Send bachelors and come heavily armed. I'm not going to be a political prisoner in the state of Oregon." *Id.*

In response, a "special committee" of the state senate "direct[ed] [Boquist] to give at least twelve hours advance notice in writing to the Secretary of the Senate before he intended to visit the State Capitol" so that the security of the building could be increased. *Id.* at 773. The district court granted a motion to dismiss against Boquist's claims, but the Ninth Circuit reversed, holding that the 12-hour notice rule was a materially adverse action.

Here, it is undisputed that Plaintiff has been continuously denied access to his office and the County building generally, except for the twice monthly meetings of the

Page 9 – OPINION AND ORDER

Board of Commissioners. If the 12-hour notice rule in *Boquist* is a materially adverse action, a near-blanket ban must also be a materially adverse action.

Regarding the management team meetings, Defendant Collier admits that those meetings are open to "elected officials." Plaintiff is an elected official but has been told he cannot attend these meetings. Collier Decl. ¶ 6. Attending such meetings appears to be a "right or prerogative" of his elected position. Additionally, Defendant Collier originally told Plaintiff that he could not attend meetings "until the investigation has been completed." Collier Decl. Ex. 1 at 2. The investigation concluded in January 2025 and found no bullying and harassment by Plaintiff, but all parties agree that Plaintiff is still barred from attending the management team meetings.

Defendants claim that such meetings are not "required" for elected officials. See Def. Sur-Reply, and Collier Decl. ¶ 4. This may be true, but it is beside the point. The question is not what is "required" of Plaintiff, but what "rights and prerogatives" come with his elected position. Whether formal or informal, Defendants admit these meetings are for "all . . . elected officials." Collier Decl. ¶ 2. Nevertheless, Defendants have continuously excluded Plaintiff from these meetings since September 19, 2024. That is a materially adverse action, as it restricts the rights and prerogatives of the office of a County Commissioner.

Regarding setting agenda items, the parties disagree on the facts. Because the Court cannot determine whether setting agenda items is a right or prerogative of Plaintiff's office, the Court cannot, on this record, determine what the status quo

Page 10 – OPINION AND ORDER

regarding agenda setting was prior to September 18, 2024. Therefore, the Court limits its analysis and relief to the areas where it has found a materially adverse action.

Additionally, this resolves the question of whether the injunction would be mandatory or prohibitory. Absent the dispute over the process setting agenda items, the parties agree about the status quo ante: Plaintiff had access to his office and the right to attend management team meetings.

### C. Causation.

The final element is causation. First Amendment retaliation under § 1983 follows a "but-for" test. *Boquist,* 32 F.4th at 778. "[I]f the outcome (the adverse action) would not have occurred without the government official's retaliatory animus, then that animus was a but-for cause of the adverse action. *Id.*

For this claim, the Ninth Circuit has adopted a burden-shifting approach. *Id.* at 777.  If a plaintiff makes a prima facie case, "the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Id.* at 778 (internal quotations and citation omitted.

"In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as a proximity in time between the protected speech and the adverse action, the defendant's expression of opposition to the protected speech, and evidence that the defendant proffered false or pretextual explanations for the adverse action." *Id.* at 777.

Page 11 – OPINION AND ORDER

Here, Defendants conceded in oral argument that the only conduct at issue was Plaintiff's speech at the public Board of Commissioner's meeting on September 18, 2024. Despite the concession, at oral arguments, Defendants argued that the reactions to Plaintiff's speech justified the restrictions put on Plaintiff. But a reaction to speech, by its nature, cannot be causally independent of that speech.

Additionally, when Defendants' counsel was asked to point to any part of Plaintiff's speech that would implicate safety and security of employees—the justification offered in Defendants' papers—he was unable to identify anything of the sort. Instead, Defendants repeatedly pointed to County employees' reactions to the speech, but Defendants cannot substitute the subjective reaction of the listeners for a genuine threat. Regardless, as shown in *Boquist*, even explicit references to violence in speech do not render that speech unprotected.

There is no need to proceed with a burden-shifting analysis. On the record before the Court and as conceded by Defendants at oral argument, absent Plaintiff's speech on September 18, 2024, there would have been no complaints, no investigation, and no adverse actions. Plaintiff's protected speech is much more likely than not the but-for cause of the materially adverse actions.

The Court will briefly address the unsigned email from Defendant Collier to Plaintiff, included as Exhibit 2 to his Supplemental Declaration, which was sent on March 10, 2025, in reply to an email from Plaintiff on February 24, 2025. Collier Supl. Decl. Ex 2 at 1-3, ECF No. 26. In response to Plaintiff's email asking "[h]ow do you recommend rebuilding trust, rapport, and engagement? I would appreciate your

Page 12 – OPINION AND ORDER

perspectives and next steps[,]" Defendant Collier upbraids Plaintiff for a variety of behaviors, including emailing staff, directors, and his fellow Commissioner, not giving advance notice before vising a County department, a "lack of professional boundaries[,] "and not "adhering" to and not "understand[ing]" Plaintiff's "job as a commissioner." *Id.* The only dates given by Defendant Collier for Plaintiff's behavior post-date Plaintiff's email to Defendant Collier (the reply took two weeks), let alone the imposition of the materially adverse actions. *Id.* Even under a burden-shifting framework, these allegations are immaterial because they come after the materially adverse actions.

### III.    Irreparable Harm

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original).

The Ninth Circuit has repeatedly held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

Defendant primarily questions the delay by Plaintiff in filing this case and reasons that such delay militates against a finding of irreparable harm.

At oral arguments, Plaintiff's counsel was asked to explain this delay, and she explained that Plaintiff had tried working with the County to resolve the issue and be restored to his office, but, over time, the County shifted the requirements and its explanations. ECF No. 30. In Plaintiff's Declaration, he lays out the steps he took: he

Page 13 – OPINION AND ORDER

repeatedly worked with the executive director, a former Commissioner, of the Association of Counties ("AOC"), a group that is an "operational best practice think tank" for counties; he attended several trainings and conferences between October 10, 2024, and April 8, 2025, that focused on topics like supervision, human resources, public records, and governmental ethics; on January 22, 2025, he apologized at a public meetings of the Board of Commissioners; and he issued a public apology in the Yachat's News. Miller Decl. ¶17-31.

Despite this, on March 10, 2025, Defendant Collier asked for an additional apology to be approved by Defendant Collier and twice accused Plaintiff of insincerity. Collier Supp. Decl. Ex. 2 at 1-2. Defendant Collier does not acknowledge a single positive development in the email—to the Court, the tone of the email is best described as "scolding."

Plaintiff "had hoped all these efforts would resolve County Counsel and Commissioner Hall's concerns about [Plaintiff's] return to [his] Commissioner duties[,]" but "[a]fter exhausting all other options, [Plaintiff] filed this lawsuit." *Id.* ¶32, 33.

Regardless of the reason for the delay, the cases on which Defendant relies are distinguishable.

In *Lydo Enterprises v. City of Las Vegas*, the plaintiffs sought "a preliminary injunction enjoining [the City of Las Vegas] from enforcing a zoning ordinance restricting the location of "sexually oriented businesses."   745 F.2d 1211, 1212 (9th

Page 14 – OPINION AND ORDER

Cir. 1984). The district court granted the injunction, and the Ninth Circuit reversed. *Id.* at 1216. The reasoning was three-fold.

First, the ordinance was passed in 1978 and had a five-year window for businesses to comply, but Plaintiff waited until 10 days before the end of that window to file for a temporary restraining order. *Id.* at 1214. That made the delay just under five years, compared to the one-and-a-half years in the instant case. Regardless, the court specifically said that "delay is not the principal basis of our decision." *Id.* at 1214.

Second, while the district court had found the likelihood of a First Amendment violation, the appellate court did not, saying that the record did not support that "the ordinance create[d] a substantial restriction on protected speech" and that the facts did not "raise a serious litigation question whether the ordinance suppresses or restricts access to speech." *Id.* at 1214-1215. "Because we disagree with the [district] court's conclusion that Lydo has made a showing that First Amendment freedoms are in fact violated by the ordinance, we cannot affirm a finding of irreparable injury on this basis." *Id.* at 1214. Here, the constitutional question provides a strong basis for finding irreparable harm.

Third, the court found that the injury to the business was reparable, stating that "the prospective injury consists primarily of the financial loss and costs involved in moving and reopening elsewhere" and that the "loss is calculable and compensable by an award of damages." *Id.* at 1214, 1216. The constitutional rights of an elected official are not the same as the financial losses of a business and are not disposed to

Page 15 – OPINION AND ORDER

a dollar-figure calculation. That is the essential difference between irreparable and reparable harm.

Turning to *Oakland Tribune v. Chronicle Publishing Company, Inc.,* the plaintiff and defendant were newspaper publishers, and plaintiff alleged that the exclusivity provisions in some sales contracts for syndicated features entered into by the defendant implicated antitrust law. 62 F.2d 1374, 1375 (9th Cir. 1985). No constitutional right was implicated; this was about economic competition. The district court denied the injunction, and the appellate court affirmed. *Id.*

The plaintiff's injury for loss of circulation and revenue "involve[d] purely monetary harm measurable in damages." *Id.* at 1376. While the appellate court said the district found "[p]laintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm[,]" the appellate opinion does not explain how long the delay was. The court did say that "the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for *several years.*" *Id.* at 1378 (emphasis added). In the instant case, the delay was less than two years, and the issue is constitutional. *Oakland Tribune* is inapt.

Finally, Defendants parenthetically cite a wait of "16 months" in *Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Environment v. U.S. Department of the Navy* as untimely. 122 F. Supp. 3d 1068 (W.D. Wash. 2015); Def. Sur-Reply at 9. But that is incomplete and misleading. In that case, the court describes a more detailed timeline: the complained of action by the Navy started in 2008, the plaintiff sent a

Page 16 – OPINION AND ORDER

letter to the Navy in 2013, and the next month filed its case. *Id.* at 1083. The Navy ceased the complained of conduct for the remainder of 2013 but resumed in January 2014. *Id.* The motion for preliminary injunction was filed 16 months after the resumption of the conduct. *Id.* That means there was a five-year delay in filing the case and then a 16-month delay in moving for an injunction *after* the resumption of the conduct in 2014. Here, Plaintiff waited about one-and-a-half years to file the case, and less than three weeks from filing the case Plaintiff moved for an injunction.

Plaintiff has shown a likelihood of success on a First Amendment claim. That itself is enough to show irreparable harm, and any undue delay that may be attributable to Plaintiff is not enough to overcome it.

## IV.    Balance of the Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).  The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).  When, as here, the government is a party to the action, these factors will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Plaintiff asserts that "'it is always in the public interest to prevent the violation of a party's constitutional rights[,]" Pl. Mot at 7 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), and that a claim "that raises serious First

Amendment concerns compels a finding that the balance of hardships tips sharply" in favor of the aggrieved party. Pl. Mot. at 6 (citing *Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc)). Additionally, Plaintiff is an elected representative, so deprivations of his rights and prerogatives also implicate a deprivation of the electorate of the representation they voted for. Pl. Mot at 7.

Defendants rely on the assertion that Plaintiff causes "substantial disruptions" and allowing him to use his office or attend management team meetings "would be a severe detriment to the County's ability to conduct its business operations." Def Resp. at 18-19. Defendants also assert that "[key] employees working in the County courthouse administration office choose to work from home" when Plaintiff is allowed in the building for the twice-monthly meetings of the Board of Commissioners.

Here, Defendants' theory seems to run counter to democratic and constitutional values by allowing (unnamed) County employees to veto an elected Commissioner's exercise of the rights and prerogatives of his office based on that Commissioner's protected speech.

The Court finds that the balance of the equities and public interest sharply in favor of Plaintiff.

## V.     Bond

The Court "may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.

Page 18 – OPINION AND ORDER

R. Civ. P. 65(c). Here, the Court concludes that the facts of this case do not support the necessity of a bond.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction, ECF No. 11 is GRANTED. The Court hereby issues a preliminary injunction ORDERING Defendants to return Plaintiff to the enjoyment of the regular rights and prerogatives of his office as a Lincoln County Commissioner immediately, including access to a physical office in the customary location and physical access to the customary building(s), as well as meetings or communications to which the holder of his office would be regularly invited or included, commensurate with the practice prior to September 18, 2024, and identical to the rights and prerogatives of any other Lincoln County Commissioner. As set forth above, the Court makes no finding regarding the question of whether agenda setting is a right of the office of County Commissioner without qualification, and that issue is not covered by this injunction.

It is so ORDERED and DATED this ____18th____ day of June 2026

_/s/Ann Aiken_____
ANN AIKEN
United States District Judge

Page 19 – OPINION AND ORDER