BETH CREIGHTON, OSB #972440
E-mail: *beth@civilrightspdx.com*
KRISTIN BELL, OSB #235024
E-mail: *kristin@civilrightspdx.com*
CREIGHTON & ROSE, PC
Strowbridge Building, Suite 300
735 SW First Avenue
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:       (503) 223-1516

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CASEY MILLER,**<br><br>                  Plaintiff,<br><br>       vs.<br><br>**LINCOLN COUNTY,** a public body, **DAVID COLLIER,** in his individual capacity, **KELLY MEININGER,** in her capacity as the personal representative of the estate of **CLAIRE HALL, WALTER CHUCK,** in his individual capacity, and **KRISTIN YUILLE,** in her individual capacity<br><br>                  Defendants. | Civil Case No. 6:26-cv-00499-AA<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**INTRODUCTION**

As an initial matter, while it is true that counsel for Defendants and Plaintiff conferred on

the matters at issue in Defendants' Motions pursuant to Defendants' LR 7-1 certification, they

**CREIGHTON**
**& ROSE, PC** | ATTORNEYS
AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

have excluded from their narrative further relevant facts. Namely, that during the conferral, Counsel for Plaintiff agreed to amend the Complaint to clarify Plaintiff's positions on his claims to assuage Defendants' concerns, particularly as it concerned Defendants' own potentially protected activity. Creighton Declaration, paragraph 3. However, without waiting for the promised amendment to the Complaint, Defendants' filed their Motions the same day the conferral took place. Creighton Declaration, paragraph 4. Plaintiff has since amended the Complaint (*see* DKT 24) as stated to Defendants' prior to the filing of these Motions. Defendants then filed a near identical Motion responsive to Plaintiff's Amended Complaint.

## RESPONSE

### 1. Defendants' ANTI-SLAPP Motion lacks merit and is frivolous.

"Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. v. Legal Servs. Corp.*, 561 F Supp 2d 1187, 1189 (D Or 2008). Defendants raise a Special Motion to Strike based on Oregon's state procedural law for which there is no equivalent statute under federal procedural law. "[F]ederal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965).

> "Requiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure. That result would effectively allow the state anti-SLAPP rules to usurp the federal rules. We could not properly allow such a result."
>
> *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F3d 828, 833-34 (9th Cir 2018).

While Defendants do not actually cite a federal procedural rule in bringing their Special Motion

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 2 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

to Strike, the Ninth Circuit determined in *Planned Parenthood Federation* that the proper federal procedural mechanism to evaluate a case under a State Anti-SLAPP statute wherein discovery has not yet occurred is FRCP 12 (b)(6), a Motion to challenge the legal sufficiency of a Complaint. Defendants have also brought a separate FRCP 12 (b)(6) Motion to Dismiss Plaintiff's second claim for relief, but it is unclear exactly how this should differ procedurally given the federal court's use of federal procedural law. Further, even absent this procedural roadblock to Defendants' Special Motion to Strike, a Special Motion to Strike will not vindicate Defendants' position.

Plaintiff has brought claims against Defendants based on the retaliation Defendants subjected him to because of his protected activity, namely, his speech as a member of the Lincoln County Board of Commissioners regarding, among other concerns, violations of public meeting laws by other Commissioners and legal counsel Kristine Yuille. The intended purpose of a Special Motion to Strike is to provide a statutory mechanism to strike "a claim that arises out of the exercise of the right of petition or free speech in connection with a public issue or an issue of public interest." *Staten v. Steel*, 222 Or App 17, 29, 191 P3d 778, 787 (2008), *rev den*, 345 Ore. 618, 201 P.3d 909 (2009). Defendants filing an Anti-SLAPP in this context turns First Amendment law on its head, and twists reality beyond recognition by claiming that the retaliation Plaintiff suffered should be the basis for further court-sanctioned First Amendment retaliation for exercising his rights. Defendants have previously admitted they took action against Plaintiff due to statements he made on September 18, 2024, at a regular County meeting of the Board of Commissioners. *See* DKT 12, Defs' Response to Plaintiff's Injunction Motion, pg. 6. *See also* DKT 14, Yuille Declaration In Support of Defendants' Response to Plaintiff's Injunction Motion,

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 3 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

paragraphs 16, 17, & 18. Defendants further admit that these statements by Plaintiff caused Defendants to decide Plaintiff  "was no longer allowed to attend management meetings, contact Board staff [...], or occupy his courthouse office." DKT 12, Defs' Response to Plaintiff's Injunction Motion, pg. 8. (This is despite the fact that Defendants' own investigation found that Plaintiff did not engage in prohibited bullying or disrespectful conduct under the County's personnel rules. See DKT 24, First Amended Complaint, paragraph 28.) While Defendants' Motion characterizes this retaliatory conduct as "security measures to protect its staff and other elected officials from Plaintiff's harassment and disruption regardless of whether Plaintiff engaged in any alleged protected activity" (DKT 28, pg. 4), Defendants' own filings disprove this contention. Defendants' contend that the impetus for the "security measures" after the report included the "Witness Impact Statements from the third-party investigation into Miller's actions at the September Board Meeting." DKT 14, Yuille Declaration, paragraphs 20 & 21. However these statements evidence that they are based on Plaintiff's statements. *See* DKT 14, Yuille Declaration, Exhibit C. ("When this happened, he publicly put staff and the people he works with down, thinking he's being transparent. It just brought me back to that place and seeing people coming from the meeting crying and headed to the bathroom, watching people leave for day. The office basically emptied out.") Further, the report's focus on the emotional reactions of others, rather than Plaintiff's statement itself, de-emphasizes that Plaintiff's speech was not harassment.

Defendants' position, that Defendants' materially adverse actions against Plaintiff in response to the speech he made do not impermissibly limit "persons participating in public issues," but Plaintiff's civil claims brought against Defendants in response thereto does, is fundamentally absurd, and is a blatant attempt to flip the narrative of this case, and cast Plaintiff,

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 4 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

and not Defendants, as the party attempting to abuse the mechanisms of government to punish others for the exercise of their rights.

ORS 31.150(2)(a) and (d) state that a special motion to strike may be made for a civil claim arising from:

> "Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law; [and] Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest."

To be able to invoke ORS 31.150, the claim against which the Anti-SLAPP motion is made has to arise out of a statement, document or conduct in furtherance of the exercise of certain constitutional rights, and the party making the motion have the burden of showing that the claim moved against qualifies. *See* ORS 31.150(4). "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Mindys Cosmetics, Inc. v. Dakar*, 611 F3d 590, 597 (9th Cir 2010) (internal quotations omitted, emphasis in original) (interpreting California's analogous Anti-SLAPP statute). In an attempt to seek the protections of the Anti-SLAPP statute, Defendants characterize their actions as "internal investigations into an alleged misconduct by a governmental body and related memos with the findings of such investigations." DKT 28, Defs' Special Motion to Strike, pg. 9. There are multiple issues with that assertion. First, Plaintiff has explicitly excluded protected actions as basis for relief in his Amended Complaint, *See* DKT 24. Second, Defendants *admit* that their investigation into Plaintiff has concluded, yet their continued adverse actions against him were still in effect, so they cannot be ancillary to an investigation. Third, the

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

allegations against Plaintiff that were investigated, that he engaged in bullying of disrespectful conduct prohibited by the County's Personnel Rules, were refuted by their own investigation results. Fourth, Defendants also admit that the purpose of their adverse actions is "holding a public official accountable for misconduct" (DKT 28, Defs' Special Motion to Strike, pg. 15). When this alleged "misconduct" is protected speech, that is defacto retaliation. Further, enacting discipline is not protected speech. "At bottom, disciplining a [Plaintiff] [...] is not the same thing as making a public statement to that effect. The latter is, or may be, speech on a matter of public concern. The former is not speech at all." *Bonni v. St. Joseph Health Sys.*, 11 Cal 5th 995, 1021, 281 Cal Rptr 3d 678, 698, 491 P3d 1058, 1074 (2021).

In Plaintiff's case, the adverse actions he suffered (including barring Plaintiff from attending management meetings, contacting Board staff, placing items on the agenda, utilizing his own office, and Defendants' publishing a media release that disseminates employees' alleged reactions to Plaintiff's statements) were not the protected speech of his fellow elected officials, they were actions they took to limit his ability to effectively perform his duties. Therefore, Defendants cannot show that their actions qualify as speech, and are entitled to protections.

> "Although criticism alone is unlikely to be material, the [...] rule issued by Boquist's political opponents was not a mere exchange in the give-and-take of the political process, or a rather minor indignity. And the adverse action before us [...] is not itself merely a form of speech from Boquist's opponents, or an expression of their political views. To the contrary, the [...] rule is a form of punishment which deprives Boquist of authority he enjoyed by virtue of his popular election, and prevent[s] [Boquist] from doing his job."
>
> *Boquist v. Courtney*, 32 F.4th 764, 783-84 (9th Cir 2022) (internal citations and quotations omitted.)

As *Boquist* establishes, Defendants' affirmative actions are not "merely a form of speech," and

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

thus Defendants are not entitled to the protections of Oregon's Anti-SLAPP provisions. Plaintiff has amended the second claim to make clear that the adverse actions Plaintiff alleges as to his second claim do not include protected speech (DKT 24), but the basis for Plaintiff's Retaliation claim was never the speech of the Defendants, rather, it was the materially adverse actions they took against Plaintiff to impermissibly limit Plaintiff's speech. This is not a case (and was not such a case even before the clarification provided by the Amended Complaint) wherein "[t]he allegations of plaintiff's claim are based solely on written statements and documents" (*Mohabeer v. Farmers Ins. Exch.*, 318 Or App 313, 318, 508 P3d 37, 41 (2022)).

The adverse material actions taken against Plaintiff by Defendants in retaliation for Plaintiff's protected speech were analogous to the challenged 12 hour notice rule in *Boquist v. Courtney*, where a state legislator (Boquist) was required to give 12 hour notice before appearing at the state legislature do to some of his previous spoken remarks. The 9th Circuit determined:

> "[T]he 12-hour notice rule is a materially adverse action. [...]The advance notice requirement eliminates the possibility of spontaneous speech, including a senator's ability to immediately respond to and address a political issues arising on the floor of the Oregon state senate. Indeed, the 12-hour notice rule prevents Boquist from entering the Capitol for any purpose unless he gives twelve hours advance notice. Thus, the 12-hour notice rule disproportionately burden[s] political speech that must respond to changing current events. [...] The 12-hour notice rule therefore prevents Boquist from exercising authority he enjoyed by virtue of his popular election, namely, having timely access to the physical seat of government where governmental debates take place[.] The rule likewise interferes with Boquist's ability to meet with constituents, elected officials, and others at the State Capitol Building on short notice, and therefore prevent[s] [Boquist] from doing his job. These significant burdens would chill a person of ordinary firmness from continuing to engage in the protected activity. Accordingly, the allegations in Boquist's complaint raise a plausible inference that the defendants engaged in retaliatory conduct that qualifies as a materially adverse action."

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 7 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

*Boquist v. Courtney*, 32 F.4th 764, 783-84 (9th Cir 2022) (internal citations and quotations omitted.)

In this case, Defendants have taken adverse material actions against Plaintiff because of his speech, including barring him from his office and meetings, which "interferes with [his] ability to meet with constituents, elected officials, and others [...] on short notice, and therefore prevent[s] [him] from doing his job." *Id.*

> "[A]n adverse action against an elected official is material when it prevent[s] [the elected official] from doing his job, deprive[s] him of authority he enjoyed by virtue of his popular election, or otherwise prevents him from enjoying the full range of rights and prerogatives that came with having been publicly elected[.]"

*Id.* (Internal citations and quotations omitted).

**2.      Defendants' Motion to Dismiss is premised on an incorrect understanding of the law and should be denied.**

Plaintiff has amended his Complaint to pursue aiding and abetting claims for Retaliation against the individually named Defendants pursuant to ORS 659A.030(1)(h) (*See* DKT 24), however, even prior to this amendment, Plaintiff sufficiently pled his Whistleblower Retaliation claim against all Defendants. "[D]ismissal for failure to state a claim is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs.*, 622 F3d 1035, 1041 (9th Cir 2010). None of Defendants' arguments make this showing.

As Defendants' retaliation is premised on a continuing course of conduct by Defendants, his claim is subject to the continuing violation theory, meaning his claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 8 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

and at least one act falls within the time period." *AMTRAK v. Morgan*, 536 US 101, 122, 122 S Ct 2061, 2077, 153 LEd2d 106, 128 (2002) (superseded by statute on other grounds). Every day that Plaintiff is barred from his office or disallowed from other Commissioner rights and duties, a violation occurs anew. Because Defendants' course of conduct of retaliatory adverse actions continue to the time of the filing of this Response, Plaintiff's claim is not time barred, it is ongoing.

Defendants further argue that Plaintiff is not entitled to the protections of ORS 659A because he is not an "employee," however, no Oregon state court interpreting the relevant definition of "employee" (ORS 659A.200(2)(a)) has stated so, and Plaintiff meets the definition of employee as established in ORS 659A.200(2)(a).[1] Further, ORS 659A and the OARs that interpret this chapter, unlike Title VII and ADEA, do not define employees to exclude elected officials, and the Oregon cases that suggest Oregon elected officials are not "employees" were interpreting a separate statute (public employee overtime) that had different statutory definitions of employee and employer than those found in ORS 659A.

> "The Tribe argues that St. Marks cannot be considered an employee because he was elected. But the Supreme Court has held that '[t]he mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee.' *Clackamas*, 538 U.S. at 450; cf. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) ('There is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship.')."
>
> *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States* DOI, 900 F3d 1152, 1158 (9th Cir 2018) (interpreting different statute)

---

[1] "'Employee' means a person: Employed by or under contract with the state or any agency of or political subdivision in the state;" ORS 650A.200(2)(a)

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

*Chippewa Cree* also stands for the proposition that elected officials not being explicitly exempted from the statutory definition of "employee" (as they are not in Oregon's Employment Discrimination statutes) is evidence that elected officials are employees, and ultimately found that the challenged status of the elected official was that of an employee.

Further, the Defendants have stated that the investigation he was subjected to was to determine whether Plaintiff's "actions violated the County Personnel Rules" *See* DKT 14, Yuille Declaration In Support of Defendants' Response to Plaintiff's Injunction Motion, paragraph 19. The County Personnel Rules define "Employee" to mean "[a]ny individual in County employment who is wholly or partially subject to the Personnel Rules." *See* Exhibit 1 pg. 2. By asserting that Plaintiff could have violated the County's Personnel Rules, Defendants have tacitly admitted that Plaintiff is subject to the County Personnel Rules, and therefore is an employee. Defendants, by subjecting Plaintiff to adverse actions due to his alleged violation of the County's Personnel Rules, has waived the right to argue that Plaintiff is not an employee.

As stated above, Plaintiff suffered a materially adverse action. The very existence of this factual dispute precludes dismissal. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.") Further, Defendants' argument that it did not take adverse action against Plaintiff is essentially mooted by their own admissions in their Response to Plaintiff's Motion for Preliminary Injunction, that Defendants took action against Plaintiff due to statements he made on September 18, 2024, at a regular County meeting of the Board of Commissioners. *See* DKT 12, Defs' Response pg. 6. *See also* DKT 14, Yuille Declaration paragraphs 16, 17, & 18. Defendants further admit that these

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 10 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD

statements caused Defendants to decide Plaintiff "was no longer allowed to attend management meetings, contact Board staff [...], or occupy his courthouse office." DKT 12, Defs' Response pg. 8.

Defendants also admit that Plaintiff's agenda items have been rejected for discussion at the Lincoln County Board of Commissioners' Meetings in the past (though they dispute the reasoning therefore). *See* DKT 12, Defs' Response, pg. 12, *See also* DKT 14,Yuille Declaration paragraphs 28 & 29. Defendants claim that "Board meeting agenda items will only be added to the agenda with approval from the Chair, County Administrator, *and* County Counsel at agenda-setting meetings" but cite to no County ordinance or written policy that dictates that procedure. DKT 28, Defendants' Special Motion to Strike, pg. 9. (Emphasis added). Defendants further claim that agenda items "may also be rejected if they have not gone through legal review, which is required before placement on the agenda." *Id.* This is a massive overreach of County Counsel's statutorily designated function. ORS 203.145(2) provides that County Counsel's role is to "advise" the Board of Commissioners, "to provide such additional services as the board determines" and "serve[s] at the pleasure of the board[.]" Yuille, an unelected bureaucrat, (and not even the interim administrator) has determined, without statutory authority (or any authority beside her own statements) that she can veto items for discussion among elected leaders who are entrusted to "exercise authority within the county over matters of county concern, to the fullest extent allowed by Constitutions and laws of the United States and of this state[.]" ORS 203.035(1). Yuille is indisputably not a member of the governing body of the County, (*See* ORS 203.111 & ORS 203.240), nor has she been delegated these duties, yet has taken it upon herself to limit over what topics the governing body may "exercise general legislative authority over [...]

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

matters of county concern[.]" ORS 203.111. This overreach is particularly egregious, as Yuille was one of the persons that Plaintiff accused of wrongdoing in his September 18, 2024 statements at the Board of Commissioners meeting (See Complaint paragraph 13), which Defendants *admit* is the impetus for their actions toward him. To argue that Yuille stifle Plaintiff's speech without the benefit of any formal policy and that is not an adverse action strains credulity.

Further, Defendants argue that if they did take adverse actions against Plaintiff, Defendants have a legitimate non-discriminatory reason to do so. Legitimate, non-discriminatory reason is an affirmative defense, and Defendants bear the burden of proof. A fact-finder may or may not be persuaded by this Defense from Defendants, and so it is not a proper justification for a Motion to Dismiss Plaintiff's claims. Further, it is axiomatic that "the public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere potential disturbance to the work-place." *Robinson v. York*, 566 F3d 817, 824 (9th Cir 2009).

## CONCLUSION

Based on the reasoning herein, Plaintiff requests that Defendants' Special Motion to Strike and Defendants' Motion to Dismiss be denied.

DATED this 22nd day of June, 2026.

CREIGHTON & ROSE, PC

 s/ Beth Creighton
BETH CREIGHTON, OSB #972440
beth@civilrightspdx.com
KRISTIN BELL, OSB #235024
kristin@civilrightspdx.com
Of Attorneys for Plaintiff

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

735 SW First Avenue, suite 300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 12 – PLTF'S RESPONSE TO DEFS' SPECIAL MTS AND MTD